LEWIS MAY & another *vs.* CITY OF BOSTON.

Suffolk.   November 28, 1892. — January 5, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Land taken for Public Improvement — Damages — Evidence.*

Where damages for land taken under a statute for the purposes of a public park are
to be estimated as in cases of laying out, altering, or widening highways under
the Pub. Sts. c. 51, § 3, which provides that the damages shall be fixed at the
value of the land before such laying out, alteration, or widening, the owner is to
be compensated by the payment of the fair value at the time of the taking.   It
is the purpose of the Legislature not to permit owners to recover damages at a
value enhanced by a public improvement which owes its existence to the change
of use of the very land to be paid for.

On a petition for a jury to assess damages for the taking of land under a statute for
the purposes of a public park, evidence of a printed report of the park commis-
sioners containing a recommendation of their advisory landscape architect ten
years previously is too remote to show that the project for a park had taken defi-
nite form previous to the time in question, such that the enhanced value of land
in the vicinity was founded on a settled plan which did not include the petition-
ers' land, and which had ceased to have indefinite features, under which their
land was liable to be taken and paid for at a value unaffected by the project.

On a petition for a jury to assess damages for the taking of land by a city under a
statute for a public park, it appeared that the petitioners conveyed to the city
six years previously land adjoining that in question " for the purposes of a public
park," the deed providing that " a strip not less than sixty-five feet wide adjoin-
ing the remaining land of grantors, and in length extending the whole distance
where said granted premises bound on the remaining land of grantors, to wit, for
a distance of $595\frac{70}{100}$ feet shall forever be and remain a public way."   *Held,*
that the words "for the purposes of a public park " constituted a restriction en-
forceable in equity, and that, if the jury believed that the value of the land taken
from the petitioners was enhanced in value at and prior to the taking, by reason
of its abutting upon land so held by the city under the previous deed, they might
include such enhancement in their estimate of damages.   *Held, also,* that the
provision in regard to the way sixty-five feet wide was a condition, a breach of
which would work a forfeiture, and not a restriction enforceable in equity.

On a petition for a jury to assess damages for the taking of land by a city under a statute for a public park, the judge declined to instruct the jury that, if they believed that the land had at and prior to the time of taking been increased in value by reason of the contemplated laying out of a park way which was to include land conveyed by the petitioners to the city six years previously, but not the land for the taking of which the petitioners claimed damages, the jury might include such increase in value. *Held*, that the request would have been correct as applied to a case in which it appeared that there was a definite and settled plan for laying out a defined park which did not include the land taken from the petitioners, and that the taking of the petitioners' land was for a new and different public improvement.

On a petition for a jury to assess damages for the taking of land by a city under a statute for a public park, the judge declined to instruct the jury, as requested by the petitioners, that, if the jury believed that the land had at and prior to the time of taking been increased in value by reason of the likelihood that a public park was to be constructed adjoining, but not including, the land taken, they might include such increase in value in their estimate, and that, if they believed that the land had at and prior to the time of the taking been increased in value by reason of the likelihood that a parcel of land adjoining that in question conveyed six years previously by the petitioners to the city for the purposes of a public park was to constitute a portion of a more extended parkway or system of parks, they might include such increase in value in their estimate. *Held*, that the requests were rightly refused, because the "likelihood that a public park was to be constructed adjoining, but not including," the land taken from the petitioners, did not exclude the possibility that, when the scheme was carried out by locating the park on the land, it would include this land, in which case it would be paid for at its value without increase from the improvement.

On a petition for a jury to assess damages for the taking of land, in April, 1890, by a city under a statute for a public park, the petitioners called a witness, who testified as an expert to the value of the petitioners' land, and further testified that a land company of which he was treasurer had sold, in November, 1891, through him, land directly opposite that of the petitioners, and was asked at what price the sale was made. The judge excluded the testimony. *Held*, that the exclusion was within the discretion of the judge. *Held, also*, that it did not appear that the land inquired about was situated similarly to that of the petitioners, and that its value might have been greatly changed by the location of the park, or by other causes, in the interval between April, 1890, and November, 1891.

PETITION for a jury to assess the damages for the taking, on April 30, 1890, of land of the petitioners under the St. of 1875, c. 185, by the Board of Park Commissioners of the city of Boston, for the purposes of a public park.

At the trial in the Superior Court, before *Hammond*, J., the petitioners introduced in evidence a deed from them to the city of Boston, dated December 23, 1884, and recorded on January 1, 1885, whereby the petitioners conveyed to the city of Boston, in fee, " for the purposes of a public park," a parcel of land containing 123,560 square feet, which deed contained the following

clause : " Provided, however, and these presents are upon the condition, that a part of the granted premises, to wit, a strip not less than sixty-five feet wide adjoining the remaining land of grantors, and in length extending the whole distance where said granted premises bound on the remaining land of grantors, to wit, for a distance of $595\frac{70}{100}$ feet, shall forever be and remain a public way." There was no evidence in the case that a public way was ever laid out by the street commissioners on the 123,560 feet bought of the petitioners in 1884, and there was evidence tending to show that there were no houses very near this land, and the view of the premises showed that no way of any kind had been constructed on the lot of 123,560 feet.

It also appeared in evidence, that, prior to April 30, 1890, the town of Brookline conveyed to the city of Boston for park purposes about 800,000 square feet of land adjoining the parcel so conveyed by the petitioners to the city of Boston, as above stated.

The parcel of land taken from the petitioners on April 30, 1890, contained 149,500 square feet, adjoined the parcel conveyed on December 23, 1884, by the petitioners to the city, and was a part of a larger parcel belonging to the petitioners containing 631,175 square feet, extending from Day Street in that part of Boston known as Jamaica Plain to the parcel conveyed on December 23, 1884, by the petitioners to the city.

The petitioners offered evidence tending to show that the project of laying out a parkway extending from the Back Bay Fens, so called, to Jamaica Pond, had been in contemplation for a great many years, and as far back as the year 1880, and had been made public in the annual published reports of the board, and offered in evidence the printed report of the board for the year 1880, containing a report and recommendation to the board of Frederick Law Olmsted, the landscape architect advisory to the board, embodying a plan or map of such proposed parkway, as tending to show, in connection with said deed of December 23, 1884, from the petitioners to the city, a contemplated parkway, not to include the land taken from the petitioners on April 30, 1890 ; but the judge excluded the evidence.

The petitioners further offered evidence tending to show that the contemplated laying out of a parkway, and the knowledge of

the same on the part of the public through the published reports of the board, and the deed from the petitioners to the city of December 23, 1884, caused an enhancement of the value of the remaining land of the petitioners, including that taken on April 30, 1890.

The petitioners called as a witness Alfred D. Chandler, Esq., who testified as an expert to the value of the petitioners' land, and further testified that the Brookline Land Company, of which the witness was treasurer, had sold in November, 1891, through the witness, a parcel of land containing about one hundred thousand square feet on Pond Avenue, and directly opposite the land of the petitioners, and was asked by the petitioners at what price said sale was made ; but the court excluded the evidence.

The petitioners contended that the land taken from them on April 30, 1890, would have been, prior to that time, greatly increased in value if the strip of land sixty-five feet wide extending along the boundary of the same, and mentioned in the deed of December 23, 1884, was to be a public way, and some of the experts who testified for the petitioners gave, as one of the reasons for the opinion they gave of the value of the land of the petitioners taken, that it bounded on a strip of land sixty-five feet wide which was or was to be a public way.

The petitioners requested the judge to instruct the jury as follows :

" First. The words ' for the purposes of a public park,' in the deed of Dec. 23, 1884, from the petitioners to the city of Boston, constituted a restriction enforceable in equity ; and if the jury believe that the value of the land taken from the petitioners was enhanced in value at and prior to the time of such taking by reason of its abutting upon a public park, the jury may include such enhancement of value in their estimate of damages.

" Second. By the acceptance on the part of the city of Boston of the deed to it from the petitioners of Dec. 23, 1884, the city of Boston agreed and was bound to permit the parcel of land thereby conveyed to be used solely for the purposes of a public park, and if the jury believe that the land taken from the petitioners had been increased in value at and prior to the time of the taking by reason of said agreement and obligation on the part of the city, the jury may include such increase in their estimate of damages.

" Third. The conveyance of Dec. 23, 1884, by the petitioners to the city of Boston, of the parcel of land containing about 123,560 square feet, and the acceptance by the city of said conveyance, constituted a dedication of said parcel of land to public uses for the purposes of a public park, and the jury in estimating the petitioners' damages may consider any enhancement of value by reason of such dedication.

" Fourth. If the jury believe that the land taken from the petitioners on April 30, 1890, had at and prior to that time been increased in value by reason of the contemplated laying out of a parkway which was to include the land conveyed by the petitioners to the city of Boston on Dec. 23, 1884, but not the land for the taking of which the petitioners claim damages, the jury may include such increase in their estimate of damages.

" Fifth. If the jury believe that the land taken from the petitioners on April 30, 1890, had at and prior to that time been increased in value by reason of the likelihood that a public park was to be constructed adjoining, but not including, said land so taken from the petitioners, the jury may include such increase in value in their estimate of damages.

" Sixth. If the jury believe that the land taken from the petitioners on April 30, 1890, had at and prior to that time been increased in value by reason of the likelihood that the parcel of land conveyed on Dec. 23, 1884, by the petitioners to the city of Boston for the purposes of a public park was to constitute a portion of a more extended parkway or system of parks, they may include such increase in value in their estimate of damages.

" Seventh. The provision in the deed of Dec. 23, 1884, from the petitioners to the city of Boston, that a strip of land not less than sixty-five feet wide adjoining the remaining land of the grantors should forever be and remain a public way, although in form a condition, constituted a restriction enforceable in equity; and if the jury believe that the land taken from the petitioners was increased in value at and prior to the time of such taking by reason of its abutting upon a public way, they may include such enhancement of value in their estimate of damages.

" Eighth. By the acceptance on the part of the city of Boston of the deed to it from the petitioners of Dec. 23, 1884, the

city of Boston agreed and was bound to permit a strip of land sixty-five feet wide, extending along the boundary of the land, for the taking of which the petitioners claim damages, to forever be and remain a public way; and if said land so taken from the petitioners had been enhanced in value at and prior to the time of such taking, by reason of said agreement and obligation on the part of the city, the jury may include such enhancement of value in their estimate of damages.

"Ninth. The conveyance on Dec. 23, 1884, by the petitioners to the city of Boston, and the acceptance by the city of said conveyance, constituted a dedication to public uses for the purposes of a public way of a strip of land sixty-five feet wide, extending along the boundary of the land taken from the petitioners, and the jury in estimating the petitioners' damages may consider any enhancement of value by reason of such dedication.

"Tenth. If the jury believe, upon all the evidence, including the deed of Dec. 23, 1884, from the petitioners to the city of Boston, that on and prior to April 30, 1890, there was a likelihood that a public way sixty-five feet wide would be laid out along the boundary of the land for the taking of which the petitioners claim damages, the jury may include in their estimate of damages the increase (if any) in the value of said land so taken by reason of such likelihood.

"Eleventh. If the jury believe that prior to April 30, 1890, this park project was talked of, and printed reports and plans were in circulation showing a plan of a public park, and that it was known that about eight hundred thousand feet of land had been sold by the Brookline Land Company adjacent to the land of the petitioners to the city for park purposes, — if these facts, together with others, increased the market value of this land, the jury may consider these facts in estimating damages.

"Twelfth. Under the statute by virtue of which the petitioners' land was taken, the remainder of the petitioners' land is subject to assessment for betterments; and if the jury believe that said remainder of the petitioners' land was benefited by reason of the laying out of the parkway in question, they are not to consider such benefit in estimating the petitioners' damage by reason of the taking."

The court gave requests numbered 1, 2, 3, and 12, declined to give requests numbered 7, 8, 9, and 11, and in place of the remaining requests, among other things, instructed the jury as follows:

" This strip of land was a part of the land owned by the petitioners, and the whole land ran to Day Street, and the petitioners had a right of access to it over Day Street, and over the remaining land to the land taken. They had no other right of access to it. . . . On the west of it is a piece of land which, in 1884, was deeded to the city of Boston ; and it is claimed by both parties that the language of that deed is such as to make it an important question for you in considering the value of this land. That is a deed by these petitioners to the city of Boston of a tract containing about one hundred and twenty-three thousand feet. It purports to be a deed to the city of that land for park purposes. And I instruct you that the words ' for the purposes of a public park,' in this deed, constituted a restriction enforceable in equity as to that provision ; and if the jury believe that the value of the land taken from the petitioners was enhanced in value at and prior to the time of such taking, by reason of its abutting upon land so held by the city of Boston, they may include such enhancement in their estimate of damages. That is to say, the land was taken by the city of Boston to be used for park purposes, and the city had no right to use it for any other purpose ; and if it attempted to use it for any other purpose, the owner of this land which is actually taken could prevent the city from using it for any other purpose, except so far as the city undertook to use it for the purpose of a public way. . . .

" The deed is upon the condition that there shall be a public way sixty-five feet wide running the whole length of the line, and adjoining the land which is actually taken here. You are not to assume there is a public way there. You are not to assume that, even if there is a public way, there is any obligation on the part of the city of Boston to carry it any farther, even north or south, than the line upon which the public way is spoken of in the deed. The deed is upon condition that there shall be a public way sixty-five feet wide adjoining the land which was taken in 1890. But the city did not lay out the public way. It was not obliged by that deed to lay it out. It

had taken the deed, and, if it did not lay out the public way, it would forfeit the land which it took. So, although the city was not under any obligation to create a public way there, still, as it took the deed upon condition that it should, it would violate the condition if it did not. And, therefore, there was that inducement or reason on the part of the city to build the public way. . . . And yet the city did hold that land liable to be forfeited unless it used it for that public way; and you may take that into consideration on the question of how far that would affect the market value of the land that was taken.

" There is one modification which is to be stated with reference to the market value. If the market value of this land taken had, prior to the taking, been raised by the belief on the part of the public that there was eventually to be a public park laid out in this vicinity, and if you find that the lands generally in this vicinity, this land among them, had increased in market value by reason of the belief on the part of the public that there was to be a public park in this vicinity, you cannot take that into consideration on the question of the market value, if the plan thus discussed and supposed by the public to exist did finally, as carried out, take this very land. . . . That rule, however, I instruct you, will not apply to this land so far as it is affected by this piece of land upon the west, which was deeded to the city in 1884. If you are satisfied that, by the purchase of this piece of land for the purposes of a public park, the market value of the land finally taken, six years afterwards, was increased, so that in April, 1890, this land taken at that time was worth more than it was before the deed, or by reason of the deed of 1884, the benefit to the land by reason of that deed, and laying out of that parcel deeded in 1884, may fairly be taken by you into consideration."

The jury returned a verdict for the petitioners in excess of the sum awarded them by the Park Commissioners, but less than that claimed by them at the trial, and the petitioners alleged exceptions.

*T. J. Gargan & B. L. M. Tower,* for the petitioners.

*T. M. Babson,* for the respondent.

KNOWLTON, J. The question principally discussed in this case is how to apply the rule for the estimation of damages for

land taken for a public improvement, when the improvement has been long contemplated, and the expectation of it has increased the market value of the land in the vicinity.

An owner of land taken by right of eminent domain is to be compensated by the payment of the fair value of it at the time of the taking. Ordinarily the price at which such land will sell in the market, if there is a market for it, is the criterion by which to make the estimate. But in certain cases the market price is not the true standard by which to determine the value. By the Pub. Sts. c. 51, § 3, it is provided that in laying out, altering, or widening highways, "the damages for land taken shall be fixed at the value thereof before such laying out, alteration, or widening." In the present case the damages are to be estimated as in cases of laying out, altering, or widening highways. St. 1875, c. 185, § 5.

It was evidently the purpose of the Legislature not to permit landowners to recover damages for the land taken for a public use at a value enhanced by a public improvement which owes its existence to the change of use of the very land which is to be paid for. Land taken is to be paid for at its value. Its value is to be determined by a consideration of the uses to which it is adapted. Its market value cannot legitimately be founded on anything else. It may have a market value largely dependent on a probable future demand for it; but that which is relied on ultimately to create the demand is the valuable uses to which it can be put. Whenever there is an expectation of a public improvement, the market price of land in the vicinity is likely to advance, in anticipation of the more valuable uses to which the land can be put when the improvement is made. Its real value for use is not increased until the change in its surroundings comes. If the expected improvement involves the taking of land by the right of eminent domain, the value of the land taken will never be enhanced by the improvement, for the taking precludes the possibility of ever using it under improved conditions. In that respect it stands differently from other land in the vicinity which is not taken. Whenever there is a project for laying out or widening a way, or taking land for any other public use which is expected to increase the value of real estate in the neighborhood, if the market price of land in

the vicinity rises in anticipation of the change, the statute very justly says that the land taken shall not be paid for at the increased price. If it is known from the beginning exactly what land will be taken, it must also be known that that particular land can never be made more valuable by the improvements, since it can never be used by its owner under the improved conditions. If the plan is general, and it is not known exactly what land will be needed by the public, but only that some land will, whenever the plan takes definite form, and the location is fixed, it is known that the land to be taken has not received, and never can receive, any benefit from the improvements. There is no injustice in saying that such land shall not entitle its owner to be paid out of the public treasury at a rate determined, not by its value for use, but by a prospective and speculative value of land in the vicinity, derived from an expectation of the benefit to come from the public use for which this is to be taken. One holding or buying or selling land in a neighborhood where the market price has risen in anticipation of the public improvements which will involve the taking of a part of it for a public use, is bound to know that under the statute the land which will be taken for such a use can be paid for only at its value, unaffected by the improvements. *Benton* v. *Brookline*, 151 Mass. 250. The constitutionality of legislation of this kind was established in *Dorgan* v. *Boston*, 12 Allen, 223, 231.

The land of the petitioners was taken for a public park. There was evidence tending to show that the contemplated laying out of a park in this neighborhood, and general knowledge that a park was likely to be laid out, enhanced the value of the remaining land of the petitioners, including that taken on April 30, 1890.

The evidence of a printed report of the park commissioners, containing a recommendation of their advisory landscape architect, was rightly excluded. The recommendation to the board made in 1880 was too remote to be admitted as evidence that the project for a park had taken definite form previous to 1890, such that the enhanced value of land in the vicinity was founded on a settled plan which did not include the petitioner's land, and which had ceased to have indefinite features, under which their land was liable to be taken and paid for at a value

unaffected by the project. It was not competent for the petitioners to show that the land in the vicinity had increased in price by reason of the general expectation that a park would be laid out there, for the purpose of enhancing their damages.

We discover no error in the refusal of the presiding justice to give the instructions requested, or in the instructions given. The fourth request for instructions would have been correct, as applied to a case in which it appeared that there was a definite and settled plan for laying out a defined park which did not include the land taken from the petitioners, and that the taking of the petitioners' land was for a new and different public improvement. By the evidence, so far as it is reported in this case, the whole proceedings related to a single improvement, which had not been carried out, and the details of which had not been settled before the petitioners' land was taken. We do not find in the bill of exceptions any evidence that the increase in value of the land prior to the taking was founded on a contemplated laying out of a park whose lines were fixed, so that changes could not reasonably be anticipated as possible, and we are of opinion that the jury could not have found, on any evidence disclosed in the bill of exceptions, that the increase referred to was on account of any other plan than the general originally indefinite plan under which the petitioners' land was finally taken.

The fifth and sixth requests for instructions were rightly refused, because the " likelihood that a public park was to be constructed adjoining, but not including," the land taken from the petitioners, did not exclude the possibility, that when the scheme was carried out by locating the park on the land, it would include this land, in which case it would be paid for at its value without increase from the improvement. The instructions given upon the principal questions in the case were in accordance with the views we have expressed. The presiding justice was also right in ruling that the provision in regard to the way sixty-five feet wide on the land previously conveyed by the petitioners was a condition a breach of which would work a forfeiture, and not a restriction enforceable in equity.

It was within the discretion of the court to exclude the testimony of the witness Chandler. It does not appear that the

land inquired about was situated similarly to that of the petitioners; besides, its value might have been greatly changed by the location of the park, or by other causes, in the interval between April, 1890, and November, 1891.

*Exceptions overruled.*