The **STATE** of Texas et al., Appellants,

v.

Beatrice Louise **VAUGHAN** et al., Appellees.

No. 10600.

Court of Civil Appeals of Texas.

Austin.

Dec. 3, 1958.

Rehearing Denied Jan. 7, 1959.

Will Wilson, Atty. Gen., James H. Rogers, Asst. Atty. Gen., Robert L. Burns, Houston, for the State.

Doren Eskew, City Atty., Thomas P. de Steiguer, Asst. City Atty., Austin, for City of Austin.

Tom Blackwell, County Atty., Peter Zaremba, Asst. County Atty., Austin, for Travis County.

J. A. Rauhut, Austin, for the Children's Home of Austin.

David L. Tisinger, James R. Sloan, Austin, for Beatrice Vaughan and others.

Pearce Johnson, Austin, for unborn children of Beatrice Vaughan and Eugenia Faye Roberdeau.

GRAY, Justice.

This is a condemnation proceeding and is an appeal from a judgment, rendered on a jury's verdict, awarding damages for the taking of real property and also awarding damages allegedly sustained by reason of notice to vacate the property.

The State, acting by the State Building Commission, instituted this proceeding against the owners of the property in question naming them as follows:

"Beatrice Louise Vaughan, and husband, Glendon Myron Vaughan; Eugenia Faye Roberdeau, and husband, George Randolph Roberdeau; Eugenia Louise Izard, and husband Glynn Ray Izard; Faye Jones Thompson, a widow; The unborn children of Beatrice Louise Vaughan; The unborn children of Eugenia Faye Roberdeau; The City of Austin, Texas; The County of Travis, Texas; The Children's Home in Austin, Texas.

"Each of the foregoing owners is named as an owner individually, and the following are named also as owners in the respective capacities shown:

"Eugenia Faye Roberdeau, as independent executrix of the Estate of Lena Castleman.

"Beatrice Louise Vaughan, as independent executrix of the Estate of Lena Castleman.

"Eugenia Louise Izard, as a representative of a class, the class being the unborn children of Beatrice Louise Vaughan and the unborn children of Eugenia Faye Roberdeau."

The purpose of the proceeding was to acquire all of Lot 4 and parts of Lots 5 and 6 in Block 147 of the City of Austin as a site for a State Office Building. The named property constituted a single unit and was all, not just a part, of defendants' tract.

The City of Austin, Travis County and the Children's Home of Austin were parties in the trial court and are parties here. The City of Austin and Travis County also sought recovery of accrued taxes.

The property in question was a part of the estate of Lena Castleman, deceased. She left a will and by its terms the parties here, except the State, acquired their interests therein. The tax claims were not a part of the will.

By an Act of the 54th Legislature, Acts 1955, 54th Leg. p. 1298, Ch. 514, now art. 678m, Vernon's Ann.Civ.St., the State Building Commission created by Sec. 51–b of art. 3, Texas Constitution, Vernon's Ann. St., is declared to be a State agency and is given the power of eminent domain "under the General Laws" for the purpose of obtaining sites for State buildings. The Commission is authorized and directed to employ an Executive Director "to carry out such duties as the Commission may direct." Also the Commission is authorized to take such action as it deems necessary to provide for future development of the State Building Program. The Commission has designated such an area in the City of Austin. It is known as the Capitol Area and is bounded on the South by Eleventh Street, on the East by San Jacinto Street, on the North by Nineteenth Street and on the West by Lavaca Street.

The property which is the subject matter of this appeal is located within the above designated area.

The property had improvements consisting of an apartment house, a two-story duplex, and two one-story bungalows, all of which were occupied by tenants. On April 9, 1956, the Executive Director wrote the following letter:

"Dear Mrs. Roberdeau:

"As you know, the State of Texas has determined that your land is needed for the State Office Building. To insure payment of full market value for your property the State has caused a complete and exhaustive appraisal to be initiated by a recognized authority on the appraisal of real estate.

"Pending completion of the appraisal, to avoid any inconvenience to you, the State desires to keep you fully informed of its land acquisition schedule. It is estimated that the full appraisal will be completed by July 1, 1956. When the appraisal is completed you will be contacted by a negotiator for the State. To insure fairness and equality to you and each property owner and fairness to the State, the negotiator will be authorized to negotiate on the basis of the appraised price of your property.

"To assist you in planning your departure from the property and to provide you ample time to make arrangements therefor, the State has set the date for acquiring possession as far ahead as is consistent with its construction schedule. Adherence to the building schedule will require delivery of possession of your property to the State by August 15, 1956.

"Preparation of the Master Plan for the Capitol Area is now in progress by the planning consultant who is preparing the Master Plan for the City of Austin. It is estimated that this plan will be delivered to the State Building Commission by May 1, 1956. Immediate study of the plan will be made by the Commission and, as soon as possible, the Commission will adopt and announce the official Master Plan

for the Capitol Area. Realizing that this information will be helpful to land owners and tenants who desire to remain in the vicinity of the Capitol we will make every effort to expedite announcement of this plan.

"Yours very truly,

"s/ Ralph R. Wolf
"Ralph R. Wolf
"Executive Director"

Because of this letter the tenants vacated the improvements on the property and they have since been vacant.

The State's right to condemn the property was admitted and the trial was had on the issue of damages.

Prior to the introduction of any evidence the State filed its motion to suppress:

"I.

"Any testimony or evidence of any character as to the cost to owners or claimants of the land here involved of removing furniture and fixtures from said land.

"II.

"Any testimony or evidence of any character as to a loss of value to furniture and fixtures situated within the improvements on the land involved by reason of the taking or the imminence of the taking of the land by the State of Texas.

"III.

"Any testimony or evidence of any character as to the loss of rentals or loss of income to the owners or claimants of the land involved occasioned by the imminence of the taking of the land by the State of Texas or occasioned by the announcement by the State of Texas that said property would be taken."

In opposition to paragraph 3 supra the defendants stated that they desired to in-troduce the above letter in evidence for the purpose of showing that tenants vacated the property and that they had sustained loss of rentals.

The trial court ruled that evidence of the cost of removing furniture and fixtures and evidence of loss of value of such furniture and fixtures by reason of the taking of the property would not be admitted as separate items of damages but would be admitted as affecting an appraiser in his appraisal of market value of the property. The letter supra was admitted in evidence. The State excepted to the trial court's rulings and to the introduction in evidence of the letter. Witnesses testified as to the market value of the property.

The cause was submitted to a jury on three special issues which together with the jury's answers are:

"Special Issue No. 1: What do you find from a preponderance of the evidence was the market value in Austin, Texas, on March 25, 1958, of the property involved in this case?

"Answer: $133,102.50.

"Special Issue No. 2: Do you find from a preponderance of the evidence that the defendants or any of them have sustained any financial loss or damage prior to March 25, 1958, by reason of the notice sent by the State in April, 1956, to the tenants to vacate by August 15, 1956.

"Answer: Yes.

"Special Issue No. 3: If Issue No. 2 is answered in the affirmative, then you will answer:

"What do you find from the preponderance of the evidence was the amount of financial loss or damage sustained by defendants or any of them prior to March 25, 1958, by reason of the notice sent by the State in April, 1956, to the tenants to vacate by August 15, 1956.

"Answer: $9,650.00."

The State objected to the submission of issues 2 and 3 and requested instructions limiting the jury's consideration of certain items of damages. These objections and requests were overruled. However the following instruction was given in substantially the same words as requested by the State:

"In arriving at your findings as to the reasonable market value, if any, of the property in question, you will exclude from your mind any consideration and any reflection connected with the value of such property to the plaintiff, or connected with the value of such property to the defendants, but you shall consider only the value thereof as adopted to such uses as would affect a purchaser and seller in the general market, or as would affect general market value in a market where neither buyers or sellers are under any pressure to either buy or sell."

A judgment was rendered that defendants recover $142,752.50, with interest and costs; that the City of Austin recover of the owners of the property taxes, penalties and interest in the sum of $5,659.35, and that Travis County recover taxes, penalties and interest in the sum of $861.-35. The tax liens were fixed and foreclosed and the clerk was directed to pay said sums out of the funds deposited by the State but without any direction as to the interests to be charged therewith.

The State presents twenty six points the first fifteen of which are in effect directed to the above motion to suppress evidence, the trial court's rulings thereon, the introduction of evidence in accordance with those rulings, the introduction in evidence of the above letter, the refusal to give requested instructions and the submission of issues 2 and 3. The remaining points relate to the admission and exclusion of evidence and an objection to the submitted definition of market value.

The City of Austin, Travis County and the Children's Home of Austin complain that the trial court's judgment failed to apportion and separately award them their shares of the damages and failed to properly direct the payment of the accrued taxes.

Special issue 1 supra asked the jury to find the market value of the property on March 25, 1958, this being the date the trial began. Objections to this date were not made and we will treat it as the date of the taking for all purposes here.

█ In Parrish v. State, Tex.Civ.App., 310 S.W.2d 709 (error granted) we considered an objection that evidence relating to rents lost as a direct result of a letter identical with the above letter was excluded and held that error was not presented. We adhere to that holding and here hold that the introduction in evidence of the letter of April 9, 1956 was error.

█ All individuals hold property subject to the right of the State (and other entities) to condemn the same and of course tenants who occupy the property have no greater right than the owners. Their rights to occupy the property may become the subject of condemnation but we are not here concerned with that question. The mere fact that tenants learn of contemplated condemnation and because of such information elect to vacate the property does not afford the owner the right to recover damages from the State because there has been neither a taking or any character of a physical invasion of the property. Indeed the condemnation may be completely abandoned and the property never taken. Art. 1, Sec. 17, Constitution of Texas, provides that the condemning authority must pay for taking, damaging or destroying property. Here there is a taking of the entire interest of the defendants in the property and there is no question of damage to a part not taken. The loss of tenants and the resulting loss of rentals was, in any event, incidental or consequential to the taking of the entire property by the State and for which reason the

State is not liable for such consequenial damage. City of Houston v. Wall, Tex.Civ. App., 207 S.W.2d 664, 670, Er. ref., n. r. e. Moreover prior to March 25, 1958, there is no showing of any physical invasion or appropriation of the property and therefore no prior taking shown. Webb v. Dameron, Tex.Civ.App., 219 S.W.2d 581, Er. ref., n. r. e.

■ We have referred to the Act of the Legislature, art. 678m supra whereby the Commission is authorized to condemn property "under the General Laws." The general law, art. 3264 et seq., Vernon's Ann.Civ. St., provides that an authority desiring to condemn property shall, after failing to agree with the owner as to the amount of damage, file a statement of condemnation with the county judge. There is no provision that condemnation shall be begun by letter. At most the letter supra was only a notice of the intention of the Commission to take the defendants' property but it was not accompanied by any invasion or appropriation of any right the defendants had to the legal and proper use of their property and for which reasons defendants have no right to recover damages because of the letter supra. Hamer v. State Highway Commission, Mo.Sup., 304 S.W.2d 869.

We hold that the trial court erred in admitting in evidence the letter of April 9, 1956; that issues 2 and 3 supra were not proper issues; that the trial court erred in submitting them to the jury and that the answer of the jury to issue 3 cannot be sustained.

■ The defendants claimed and offered evidence to show expenses incurred and losses sustained in removing furniture and fixtures from the property. It may be noted that such furniture and fixtures were not being condemned. In Herndon v. Housing Authority of City of Dallas, Tex.Civ.App., 261 S.W.2d 221, 223. Er. ref., the court used language appropriate here: " * * * it is only the real estate which is being taken, not the business. The owner may keep his business and continue to operate

it at a different location." Here the defendants of course could keep the furniture and fixtures and use them at other locations. The expenses incurred and losses sustained were purely incidental and consequential to the taking of the property and were not recoverable as damages for the taking of the property. Evidence as to these matters was not proper and should not have been admitted.

■ Here the entire interests of defendants in the property were taken and the ultimate issue was its market value. Evidence of the uses to which the property was put and was adaptable were proper elements of that value.

It is rather difficult to pinpoint all evidence admissible to show market value and that which is not admissible. In State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 200, 979, the court said:

"Generally, it may be said that it is proper as touching the matter of the value and depreciation in value to admit evidence upon all such matters as suitability and adaptability, surroundings, conditions before and after, and all circumstances which tend to increase or diminish the present market value. Evidence should be excluded relating to remote, speculative, and conjectural uses, as well as injuries, which are not reflected in the present market value of the property."

The above cause also holds that where a witness includes improper elements with legitimate elements of market value that the jury's consideration of such evidence should be limited by appropriate instructions.

Over the State's objection there was evidence introduced which in effect was that in the immediate vicinity of the State Capitol property values had increased since the State started acquiring property for building sites and that such increase in values had continued up to the present. We have above referred to this area and have

said defendants' property is located therein. In City of El Paso v. Coffin, 40 Tex.Civ. App. 54, 88 S.W. 502, 505, Er. dism., the court said:

"It is held generally, in cases presenting the appropriate facts, that, where a person's entire property is included in one general proceeding of condemnation for a particular purpose, it is not permissible to consider that purpose, or the results thereof, in estimating the owner's compensation. The reasons for this rule are apparent. To permit it would be to take into consideration the condemnation proceeding itself as a factor, which is not allowed. Further, it is evident in such a case that the taking, and the effect on the value from such taking, would be concurrent, and such increase would not exist when the taking occurs. The person's property is taken and is absorbed in the purpose for which it is taken, and to allow him a compensation based on the value which the property would have had if not taken would be giving it a status it could not possibly have had in the very nature of the act. The reasoning of the Supreme Judicial Court of Massachusetts is appropriate here (though not its decision, as that was controlled by a statute): 'Its real value for use is not increased until the change in its surroundings comes. If the expected improvement involves the taking of the land by the right of eminent domain, the value of the land taken will never be enhanced by the improvement, for the taking precludes the probability of ever using it under improved conditions.' May v. City of Boston, [158 Mass. 21], 32 N.E. 902."

When property is taken for a public purpose by condemnation the condemnor should not be required to pay for an increased value due to the public improvement. Housing Authority of City of Dallas v. Hubbard, Tex.Civ.App., 274 S.W.2d 165. The complained of evidence was not admissible.

For the purpose of showing that defendants' property was located within the Capitol Area as that area is defined by the Commission, the State contends the resolution of the Commission defining such area should have been received in evidence. There does not appear to have been any controversy as to the location of the property however we think the resolution was admissible for the reason asserted and also for the purpose of controlling the introduction of evidence as to market value of the property.

The State requested various instructions to the jury which were refused by the trial court. Those instructions, except one defining financial loss, were directed at evidence we have held should not have been admitted and in view of our so holding, such instructions will likely not be presented at another trial.

If evidence has been admitted before a jury then unless some instruction prevents it being argued to the jury it will most likely be argued. This being true then if evidence has been properly admitted, except when admitted for a limited purpose, it appears unnecessary for the court to instruct the jury that it should or should not consider it. Herndon v. Housing Authority, supra.

The State complains of the submitted definition of market value because it did not require the price paid to be in cash. The definition as given is in effect the same as approved in State v. Carpenter supra. The issue of market value (issue one) and the definition of market value approved in that case appears appropriate to the facts here and upon another trial we recommend that the submission follow the submission approved in State v. Carpenter supra.

In view of another trial we will notice the complaints of the City of Austin, Travis County and the Children's Home of Austin that the judgment did not properly direct the payment of taxes and did not apportion their respective interests.

The will of Lena Castleman, Deceased, has five numbered paragraphs. The first directs the payment of just debts, the fifth appoints Eugenia Roberdeau and Beatrice Vaughan independent executrices of the estate and directs that the only action to be had in the probate court in the probating of the will shall be the probating of the will, its recording and the filing of an inventory, appraisement and list of claims. We quote the other paragraphs:

"Second: I give to my half-sister, Fay Jones, One Hundred Dollars ($100.00) per month during her lifetime to be paid from the rents and revenues from my property.

"Third: I give to my nieces, Eugenia Roberdeau and Beatrice Vaughan, share and share alike, any remainder of such rents and revenues.

"Fourth: If at the expiration of ten years after my death, my said half-sister, Fay Jones, shall not be dead, my said two nieces shall continue to pay to her said sum of One Hundred Dollars ($100.00) each month from my said estate so long as she may live; but in the event my said half-sister, Fay Jones, shall be dead at the expiration of ten years after my death or when she thereafter dies, my nieces, Eugenia Roberdeau and Beatrice Vaughan, share and share alike, shall then be entitled to life estates in all of my property, and upon their deaths it is to then go to the child or children, share and share alike, of my said nieces; but if neither of said nieces have any living children at the time of their deaths, I direct that my estate shall be divided equally between the Austin-Travis County Tuberculosis Sanitorium and the Children's Home in Austin."

For the purposes of this suit it was stipulated that the present value of the interests of the above named three parties is capable of ascertainment; that Faye Jones Thompson was 75 years of age with a life expectancy of 8.87 years and that the cost of a single premium life annuity policy paying to her $100 per month for the rest of her life was $12,752.-40, and that the estate of Lena Castleman, Deceased, consists of property not involved in this proceeding of a reasonable value of $50,000, the income from which exceeds $250 per month. This stipulation was made without prejudice to the defendants who contend that the award is not subject to apportionment.

The named parties assert that the judgment should have directed that the taxes be paid out of the interests of the life tenants.

 Except for the payment of debts provided for in the first paragraph of the will, taxes are in no way mentioned. It appears that the taxes in question accrued subsequent to the vesting of the rights of the parties under the will. It is the general rule that life tenants in possession of property are liable for the payment of taxes against it. Roberts v. Roberts, 136 Tex. 255, 150 S.W.2d 236, 136 A.L.R. 1019. The taxes were a lien on the property, were the obligation of its owners and as between the life tenants and the remaindermen the taxes were obligations of the former. Bryson v. Connecticut General Life Ins. Co., Tex.Civ. App., 196 S.W.2d 532, 540, Er. ref.

The will gives to Faye Jones $100 per month during her lifetime "to be paid from the rents and revenues from my property." Looking to the will creating this right in Faye Jones (Mrs. Thompson) the right is made a charge against the rents and revenues of the property of the testator for which reason we think the will cannot be changed by creating a different fund account of which such payments are to be made. The executrices are charged with the payment to Faye Jones. Of course such payments could not defeat the payment of taxes but no such question is presented. Moreover Faye Jones (Mrs. Thompson) did not stipulate as to the present value of her interest and was not bound by the stipulated value.

■ The several interests of the parties in the property were taken and each party was entitled to be compensated for his interest and for which reason, at another trial, it should be determined what is the interest of each party so that each may be paid his part. City of Paris v. Tucker, 101 Tex. 99, 104 S.W. 1046. Arnold v. Fort Worth & D. S. P. R. Co., Tex.Civ. App., 8 S.W.2d 298. If however, at such trial, the pleadings and evidence are such that the interests of the parties cannot be determined then we think a failure to do so would not be error. Isaac v. City of Houston, Tex.Civ.App., 60 S.W.2d 543, Er. dism., 16 Tex.Jur. p. 502, Sec. 196.

■ The defendants say that the will supra created a trust which prevents apportionment of the award. We do not agree but rely for our decision on the authorities supra.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.

HUGHES, J., not sitting.