DECISION
This matter comes before this Court on a motion for reconsideration and clarification from petitioner Davol Square Jewelry Mart, LLC ("Davol Square") regarding this Court's decision filed on June 14, 2007. Specifically, Davol Square seeks to introduce evidence as to lost rental income which constituted appurtenant damages resulting from a temporary taking of part of Davol Square's property by respondent Narragansett Bay Commission ("NBC"). Davol Square has requested that this Court reconsider or clarify its decision to preclude this evidence in light of case law holding that evidence of lost rental income is admissible as appurtenant damage in a temporary taking. For the reasons stated below, this Court will not reconsider its prior decision on NBC's motion, but will, however, clarify its decision in order to delineate more clearly the boundaries of the proposed testimony of Mr. Collins.
 FACTS AND TRAVEL
In rendering this decision, this Court will briefly review the relevant facts and travel of the underlying civil action. Davol Square seeks damages from NBC, alleging that NBC, in exercise of its powers, took a portion of Davol Square's property at 69 Point *Page 2 
Street in Providence for an eighteen-month temporary easement and another portion for a permanent easement. (Davol Square Compl. at 1.) Davol Square claims that NBC partially compensated Davol Square for the condemned land and made a payment for alternative parking arrangements during the eighteen-month temporary easement pursuant to G.L. 1956 § 37-6-17. (Id. at 2.) However, Davol Square asserts that the amount paid by NBC did not constitute fair compensation for the land taken and appurtenant damages. (Id.) Davol Square now seeks damages for economic loss pursuant to G.L. 1956 § 37-6-18. (Id.)
Davol Square has expressed the intent to offer at trial expert opinion testimony from Webster A. Collins, a real estate appraiser. Davol Square retained Mr. Collins and his company, CB Richard Ellis/New England, to prepare a complete real estate appraisal report on the market value of the property at issue. (Collins Appraisal, 5/4/06 at 1.) On April 26, 2007, NBC moved for this Court to preclude Mr. Collins from offering an expert opinion on lost profits allegedly incurred by Davol Square due to the temporary and permanent easements.[1] (NBC Motion In Limine to Preclude Expert Testimony at 1.) Specifically, NBC sought to exclude
 anticipated, non-relevant evidence concerning claimed loss gross profits (rental income) which allegedly occurred because of notice of NBC's anticipated (but not actual) acquiring of easements. . . .
(NBC Motion to Exclude Non-Relevant Evidence at 1.) On May 4, 2007, this Court conducted an evidentiary hearing pursuant to DiPetrillo v. DowChemical Co., *Page 3 729 A.2d 677 (R.I. 1999) — a "gatekeeper" hearing that afforded both parties the opportunity to examine and cross-examine Mr. Collins about his proposed testimony.
On May 9, 2007, this Court held an additional hearing regarding NBC's motion to exclude non-relevant evidence. In light of testimony and arguments provided at both hearings, as well as deposition transcripts and other documentary evidence submitted to this Court, this Court held that Davol Square may not introduce testimony or evidence regarding lost gross rental profits at trial. This Court notes, however, that this statement is overly broad in light of its own analysis of the relevant case law when deciding NBC's motion to exclude non-relevent testimony. The Rhode Island Supreme Court has held that "a trial justice still retains the inherent power to modify any interlocutory judgment or order prior to final judgment." Murphy v. Bocchio, 338 A.2d 519, 522 (R.I. 1975) (citing 11 Wright Miller, Federal Practice Procedure § 2852 at 145 (1973); 7 Moore, Federal Practice para. 60.20 at 242 (2d ed. 1974)). Therefore, this Court will use this decision to clarify its previous interlocutory ruling in order to delineate the limits of Mr. Collin's testimony.
 ANALYSIS
In order to provide clear grounds for its decision on the instant motion for reconsideration or clarification, this Court will restate the relevant analysis from its previous decision regarding the admissibility of evidence concerning Davol Square's alleged lost rental income.
In its motion to exclude non-relevant testimony, NBC argued that Davol Square cannot claim lost gross rental profits allegedly resulting from NBC's plan to acquire *Page 4 
temporary and permanent easements. Mr. Collins' appraisal report included an assessment of the property's loss of value based on:
 1) lost leases due to renters choosing not to lease property because of the easements; and
 2) the reduction in rents paid by existing tenants.
Mr. Collins stated in his appraisal report that "the threat of an eminent domain taking can by itself impact property," and therefore, his report accounts for the lost leases and rent reductions in order to determine the land value that would put the owner, Davol Square, "in as good a position pecuniarily as [the owner] would otherwise have been if the property had not been taken." (Collins Report at 82 (quoting The Appraisal Institute, Real Estate Valuation in Litigation 17 (2d ed. 1995))).
In its decision, this Court noted that the Rhode Island Supreme Court has not explicitly ruled on the admissibility into evidence of lost gross rental profits resulting from a planned easement. However, our Supreme Court has held that, in condemnation cases, "a property owner is entitled to just compensation for the fair market value of the property as of the date of taking." O'Donnell v. State, 370 A.2d 233, 236 (R.I. 1977). Furthermore, in Rhode Island, "the measure of damages applicable in the case involving a partial taking is the value of the land taken at the time it is taken, together with any special or peculiar damages which result to the remaining land." Hetland v. Capaldi, 240 A.2d 155,157 (R.I. 1968). In other jurisdictions, state courts have generally held that "mere plotting or planning in anticipation of an improvement does not constitute a taking or damaging of the property affected where the government has not imposed a restraint on the use of the property."National By-Products, Inc. v. City of Little Rock, 916 S.W.2d 745, 749
(Ark. 1996) (citing Westgate Ltd. v. State, 843 S.W.2d 448 (Tex. 1992);Lone *Page 5 Star Ind. v. Sec. of Kan. Dept. of Transp., 671 P.2d 511 (Kan. 1983)). The Texas Supreme Court, for example, found that
 [c]onstruction of public-works projects would be severely impeded if the government could incur inverse condemnation liability merely by announcing plans to condemn property in the future. Such a rule would encourage the government to maintain the secrecy of proposed projects as long as possible, hindering public debate and increasing waste and inefficiency. After announcing a project, the government would be under pressure to acquire the needed property as quickly as possible to avoid or minimize liability. This likewise would limit public input, and forestall any meaningful review. . . .
Westgate, 843 S.W.2d at 453. Additionally, in State v. Vaughan,319 S.W.2d 349 (Tex. Ct. App 1959), the Texas Court of Appeals held that a property owner could not introduce evidence of lost rents from tenants vacating a property subject to a taking, because
 [t]he mere fact that tenants learn of contemplated condemnation and because of such information elect to vacate the property does not afford the owner the right to recover damages from the State because there has been neither a taking or any character of a physical invasion of the property. . . .The loss of tenants and the resulting loss of rentals was . . . incidental or consequential to the taking of the entire property by the State and for which reason the State is not liable for such consequential damage.
Vaughan, 319 S.W.2d at 354-355 (citing City of Houston v. Wall,207 S.W.2d 664, 670 (Tex.Civ.App. 1948)).
In its decision regarding the admissibility of evidence of lost rental income, this Court restricted its analysis of Davol Square's alleged losses to those that Davol Square would have incurred during "the time period after the announcement of the taking in Spring 2001, but before the temporary and permanent takings that NBC enacted on April *Page 6 
4, 2003." (Decision 6/14/07 at 9.) This Court determined that "evidence of losses incurring during that time are not relevant in this case." (Id.) However, Davol Square has proposed to introduce evidence to this Court that a large measure of the lost rent at issue was lost after April 4, 2003 and therefore outside the pre-taking period. (Petitioner's Memorandum in Support of Motion for Reconsideration and Clarification at 3.) Davol Square seeks to present fact and expert testimony as to lost rent during the period commencing April 4, 2004 going forward. (Id.) Because this Court only examined the issue of lost rent incurred during the pre-taking period, the language used in its decision was overly broad in light of the limits of its analysis. Therefore, this Court will clarify the extent of its decision by analyzing the admissibility of evidence of alleged lost rental income both after the date of the actual temporary taking as well as before that date.
The United States Supreme Court has held that the rental income that probably could have been obtained on the property during a temporary taking income is the proper measure of compensation. Kimball Laundry Co.v. United States, 338 U.S. 1, 7 (1949) (citing United States v. GeneralMotors Corp., 323 U.S. 373 (1945); United States v. Petty MotorCo., 327 U.S. 372 (1946)). In light of the Kimball Laundry decision, this Court will allow the parties to introduce evidence regarding the alleged lost rental income incurred from the date of the enactment of the temporary taking on April 4, 2003.
However, this Court will not reconsider its decision with regard to the alleged damages resulting from lost rental income that incurred before the enactment of the temporary taking. This Court finds that its analysis in its original decision still applies. In light of important policy considerations, this Court holds that evidence of losses occurring before April 4, 2003 are not relevant in this case and are therefore not *Page 7 
admissible at trial. Mr. Collins may not testify about pre-taking lost gross rental profits at trial, because his testimony in this regard would not advance a material fact in this case.
Davol Square has asked this Court to reconsider its decision in light of Reichs Ford Road Joint Venture v. State Roads Comm'n, 880 A.2d 307
(Md. 2000), a case before the Maryland Court of Appeals, and that case's analysis of Kimball Laundry. The court in Reichs Ford held that where "pre-condemnation conduct results ultimately in formal condemnation proceedings, all damages resulting from that conduct ordinarily would be included in the award." However, Reichs Ford explicitly relied on a Maryland statute that has no equivalent in Rhode Island. According to Md. Real Property Code § 12-105, the
 "fair market value of a taking includes any amount by which the price reflects a diminution in value occurring between the effective date of legislative authority for the acquisition of the property and the date of actual taking if the trier of facts finds that the diminution in value was proximately caused by the public project for which the property condemned is needed, or by announcements or acts of the plaintiff or its officials concerning the public project, and was beyond the reasonable control of the property owner."
Thus, Maryland law specifically contemplates pre-taking diminutions in fair market value, which the Maryland Court of Appeals determined to include lost rental income. Rhode Island, however, has no similar statutory provisions. "The usual measure of just compensation for a temporary taking . . . is the fair rental value of the property for the period of the taking." Yuba Natural Resources, Inc. v. UnitedStates, 904 F.2d 1577, 1581 (Fed. Cir. 1990). See First EnglishEvangelical Lutheran Church v. Los Angeles, 482 U.S. 304, 319 (1987) ("Where this burden results from governmental action that amounted to a [temporary] taking, the Just Compensation Clause of the Fifth Amendment *Page 8 
requires that the government pay the landowner for the value of the use of the land during this period."). Therefore, this Court declines to apply Maryland statutory provisions to the instant matter and will allow the admission of evidence of lost rental income occurring only during the "period of taking" that commenced on April 4, 2003.
 CONCLUSION
For the foregoing reasons, this Court denies Davol Square's motion for reconsideration. However, in clarifying and more explicitly delineating the extent of Mr. Collin's testimony and other evidence regarding alleged lost rental income due to the temporary taking, this Court will allow both parties to produce evidence about lost rental income occurring after April 4, 2003, but will deny the admission of any evidence regarding lost rental income occurring before the period of the taking.
[1] NBC moved to exclude other testimony from Mr. Collins, including testimony regarding the highest and best use of the Devol Square property. Neither party has moved for this Court to reconsider or clarify its decision regarding the admissibility of this testimony, and this Court will confine its recounting of facts and its analysis to the admissibility of testimony regarding lost rent resulting from the temporary easement. *Page 1