Earl H. SWEET et al.

v.

Dennis J. MURPHY.

No. 81–45–Appeal.

Supreme Court of Rhode Island.

March 21, 1984.

Vincent F. Ragosta, Jr., Providence, for petitioners.

Dennis J. Roberts II, Atty. Gen., Richard B. Woolley, Sp. Asst. Atty. Gen., for respondent.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on the respondent's appeal from a judgment of the Superior Court awarding money damages to the petitioners for land condemnation. The trial justice denied the respondent's motion for a new trial. We affirm.

The Department of Natural Resources of the State of Rhode Island (the department), in the exercise of the power and authority conferred under G.L.1956 chapter 6 of title 37, and chapter 1 of title 24, and the Green Acres Land Acquisition Act of 1964, G.L. 1956 chapter 4 of title 32, voted on January 15, 1974, to take certain land located in the town of Glocester to provide for public recreation and for the conservation of natural resources. The actual taking occurred on February 12, 1974.

After trial on the petition to assess damages, the jury awarded the landowners, Earl H. Sweet, Helen L. Hammond, and Susan E. Sweet (petitioners), damages in the amount of $1,950 per acre.

The evidence established that the property in question is approximately 13.48 acres of land located in western Glocester, approximately five miles from Chepachet, ten miles from Greenville, and fifteen miles from Route 295. There was some evidence that approximately 1,000 feet of the land fronted on what was referred to by petitioners and their expert as the Burlingame Reservoir.

According to the department's expert, most of the acreage in question is dry, but the area abutting the reservoir is described as swampy. The land is undeveloped and covered with a dense growth of hardwood trees and underbrush. There are no outcroppings of rocks or ledge. It does not have immediate access to any platted road or highway. It has to be reached by crossing the property of others, and it cannot be reached by vehicles. There is a footpath to the land which crosses two brooks, but the bridges over them are in disrepair. It is reasonably level but slopes toward what used to be a reservoir. The expert testified that the land is not waterfront, that there is little water there, and that there is virtually no wildlife. Through the center of what used to be the reservoir there is a brook about two feet wide which runs to a reservoir at the far end of a marshy area some distance from the land in question. He testified that even though the maps depict a reservoir, it had been either accidentally or intentionally drained. He stated that most of the land was "iron" dry except for portions that bordered on, or was in the area of, the reservoir, which was swampy and marshy.

Plat maps, condemnation maps, and an aerial photograph were introduced in evidence. Some of these exhibits evidenced that the property bordered on a body of water. The aerial photograph appears to indicate, however, that the reservoir imme-

diately adjacent to the condemned property had been reduced to a stream.

The petitioners engaged an appraiser who testified as an expert, without objection. He described the land as waterfront property for which the highest and best use would be development for year-round residential purposes. These residences would be on property with either a waterfront or a water view. His estimate, based on the town's two-acre zoning requirement, was that there could be approximately six homes on the site. He described the land as gradually sloping upward from the shore and as being covered with heavy tree growth. He stated that the reservoir bottom was not clear but was covered with much bottom growth. He denied that the area was swampy or marshy.

Earl Sweet, one of petitioners, testified to the presence of the reservoir at the time of condemnation. He testified that there was access, that people had driven vehicles including trucks in and out of the property as far back as 1939 using a pathway that was ten feet in width. He further stated that there was no swamp or marsh on the property at the time of condemnation in 1974. He also said that plans for future use of the property included residential development.

The petitioners' expert used comparable sales to establish a fair market value for the land. After describing five sales and making adjustments for size, for proximity of time of sale to date of taking, and for location and access to highways, he testified that in his opinion the fair market value of the land condemned was $3,000 per acre.

The department's expert described the town as having a minimum of industrial or commercial development. Much of the land was subject to such seasonal use as beach property on various bodies of water and campsites developed for use during the summer months. He also testified that he had visited the land in question and the adjacent property on several occasions. He said that there had not been a great deal of real estate activity in Glocester and that it was very difficult to get any accurate infor-mation on real estate transactions. Nevertheless, he said that he had examined records of about 500 transactions. He narrowed the possible comparables to 59. He said he visited 31 of the sites and conferred with someone connected with each of the transactions. He ultimately decided on three sales that, in his opinion, were comparable. After adjusting the comparable transactions to allow for the different variable factors, he gave his opinion that the fair market value of the land in question at the time of the taking was $250 per acre.

The petitioners' expert was cross-examined closely on his appraisal and the steps he had taken to reach his conclusion on fair market value. He was particularly questioned about the adjustments he had applied to the comparable sales on which he had relied. In answering several questions about specific adjustments, he referred to his experience in real estate and his knowledge of land values.

On appeal, the department argues that the opinion of petitioners' expert on the fair market value of the property was based on insufficient facts and was therefore inadmissible. It further argues that the denial of its motion to strike the entire testimony of that expert constituted reversible error.

■ The department maintains that the real estate expert's answers to questions about specific facts and adjustments to comparable sales were at best vague, conclusionary, and evasive rather than factual. In response to the motion to strike, the trial justice stated that the answers, or lack of them, would go to the weight the jury might give to the testimony of the expert but that these answers did not make the expert's testimony inadmissible. As we review the record, we agree that there were nonfactual responses, some quite wordy, and that there were references to the witness's real estate experience, but references to facts were also present. These answers may or may not be particularly persuasive, depending on one's point of view. However, we agree with the trial justice that

the quality of the answers on cross-examination would go to the weight or credibility to which the witness was entitled rather than the admissibility of his testimony. We do not believe that this case calls for the application of the principles enunciated in *Nasco, Inc. v. Director of Public Works,* 116 R.I. 712, 360 A.2d 871 (1976). In that case this court held that "an expert's opinion based solely on the witness' 'experience' in evaluating property, without detailing any specific reasons or factors, was entitled to no weight." *Id.* at 721, 360 A.2d at 876. In this case, facts were given. Furthermore, our review of the record discloses that counsel for the department never asked the court to direct the witness to give more responsive answers. He could have done so if he believed at the time that the answers he was receiving were not responsive.

Next, the department complains that petitioners' expert based his opinion regarding value on purely speculative uses, that is, residential development. We note that experts for both petitioners and the department agreed that the highest and best use of the property would be residential. The fact that the department presented evidence consistent with that proposition should preclude it from challenging the proposition on appeal. Nevertheless, an appraiser in condemnation proceedings is allowed to consider all uses to which condemned land is or might reasonably be put. Compensation should be based on the most advantageous and valuable use. *Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236, 1244 (1934). The sum required to be paid the owner of land does not depend on the uses to which he has put it but is to be ascertained by just consideration of the uses for which it is suitable. *Id.*

The department next asserts that petitioners' expert failed to verify adequately the relevant particularities of the comparable sales that he used and that therefore their probative value was not substantiated. The department specifically argues that petitioners' expert failed to verify that the transactions he used as comparables were voluntary sales. It is not unusual practice for an expert using a particular sale as a comparable to determine, if he can, whether the sale was voluntary. This enhances the credibility of the proposed comparable sale. We are not aware, however, of any opinion of this court holding that it is mandatory to verify the voluntariness of the comparable sale, nor has the department directed our attention to such authority. Rather,

"it has been said that there is a presumption, in the technical and proper meaning of that word, that the price of land sold was fixed freely and not under compulsion. In the absence of evidence warranting a finding that a sale is made under such compulsion as to make the price inadmissible as evidence of value, consideration may be given to the sale." 5 Nichols, *Eminent Domain* § 21.32 at 21–88, 89 (3d ed. 1981).

In this instance, in the absence of any evidence to the contrary, the comparable sales offered by petitioners' expert are entitled to consideration. The department's motion to strike testimony on this ground was also properly denied.

The department asserts that the trial justice's failure to give requested jury instructions amounted to reversible error. The instruction requested was this:

"The owner's actual plans or hopes for the future are completely irrelevant and you should disregard them. Such matters are regarded as too remote and speculative to merit consideration."

This requested instruction is not a correct statement of the law but rather a comment on facts that would be inappropriate under any circumstances. It was properly denied. We have examined the trial justice's instructions to the jury and we believe they fairly and accurately informed the jury on the law as it related to the issues of just compensation, fair market value, and the comparable sales' valuation method used by the experts.

**762**

The department also objected to the trial justice's refusal to read several provisions of the Rhode Island Fresh Water Wet Lands Statute to the jury. These sections declare that that Act contains certain relevant definitions and the requirement that certain areas such as *wetl*ands and swamps not be altered *without* prior approval for which there is a special procedure. It is clear to us that a reading of these statutes to the jury was not warranted in view of the evidence that had been presented. The department had not presented proof that any of the area in question had been designated as fresh-water wetlands under G.L. 1956 (1976 Reenactment) § 2–1–20(d) as amended by P.L. 1979, ch. 20, § 1, and § 2–1–20.2. Without such a designation, the provisions of the wetlands statute were irrelevant. We do not find that the failure to read to the jury specific provisions of the so-called Wetlands Act was error.

In ruling on the department's motion for new trial, the trial justice reviewed the evidence that had been presented in rather great detail and evaluated it for credibility. He expressly exercised his independent judgment when he stated that he did not believe the department's expert that the property in question was not waterfront because he found the evidence to the contrary to be credible. He reviewed the evidence of comparable sales offered by both parties and said that the adjustments made by the department's expert were unrealistic. He found that there was evidence in the record and inferences to be drawn from it that would support the jury's verdict. We can find no instance in which the trial justice misconceived or overlooked material evidence. Under the circumstances, the denial of the motion for new trial must be affirmed. *Pray v. Narragansett Improvement Co.,* R.I., 434 A.2d 923 (1981); *Barbato v. Epstein,* 97 R.I. 191, 196 A.2d 836 (1964).

The appeal of the department is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers are remanded to the Superior Court for further proceedings.