DECISION ON PETITIONER'S MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY AND MOTION TO EXCLUDE NON-RELEVANTEVIDENCE
Respondent Narragansett Bay Commission ("NBC") has brought two motions before this Court: a motion in limine to preclude expert testimony and a motion to exclude non-relevant evidence. In essence, NBC seeks an order to exclude the proposed testimony of Webster A. Collins, an expert witness for Petitioner Davol Square Jewelry Mart, LLC ("Davol Square"). In response to NBC's motions, this Court conducted an evidentiary hearing on May 4, 2007, pursuant to DiPetrillo v. Dow Chemical Co.,729 A.2d 677 (R.I. 1999), a "gatekeeper" hearing that afforded both parties the opportunity to examine and cross-examine Mr. Collins. This Court has thoroughly considered the testimony given at the DiPetrillo hearing and at the subsequent hearing on May 9, 2007, regarding the motion to exclude non-relevant evidence, as well as the deposition transcripts and other documentary evidence submitted by NBC. For the reasons set forth below, this Court grants NBC's motions in part and denies its motions in part. *Page 2 
 FACTS AND TRAVEL
In the underlying civil action, Davol Square seeks damages from NBC, alleging that NBC, in exercise of its powers, took a portion of Davol Square's property at 69 Point Street in Providence for an 18-month temporary easement and another portion for a permanent easement. (Davol Square Compl. at 1.) Davol Square claims that NBC partially compensated Davol Square for the condemned land and made a payment for alternative parking arrangements during the 18-month temporary easement pursuant to G.L. 1956 § 37-6-17. (Id. at 2.) However, Davol Square asserts that the amount paid by NBC did not constitute fair compensation for the land taken and appurtenant damages. (Id.) Davol Square now seeks damages for economic loss pursuant to G.L. 1956 § 7-6-18. (Id.)
Davol Square has expressed the intent to offer at trial expert opinion testimony from Webster A. Collins, a real estate appraiser. Davol Square retained Mr. Collins and his company CB Richard Ellis/New England to prepare a complete real estate appraisal report on the market value of the property at issue. (Collins Appraisal, 5/4/06 at 1.) NBC has now moved for this Court to preclude Mr. Collins from offering an expert opinion on lost profits allegedly incurred by Davol Square due to the temporary and permanent easements; the highest and best use of the Davol Square property at the time of NBC's acquisition of the property; and the amount of damages that would constitute just competition for the permanent easement on the property. (NBC Motion In Limine to Preclude Expert Testimony at 1.) Additionally, NBC has sought to exclude
 anticipated, non-relevant evidence concerning claimed loss gross profits (rental income) which allegedly occurred because of notice of NBC's anticipated (but not actual) acquiring of easements . . . and the supposed likelihood of *Page 3 
the grant of a dimensional (height) variance permitting [Davol Square] to construct a building double (14 stories) the admitted controlling legal restriction of 7 stories.
(NBC Motion to Exclude Non-Relevant Evidence at 1.) This Court addresses bothparties' arguments below.
 ANALYSIS
Rule 702 of the Rhode Island Rules of Evidence governs the admission of expert testimony in Rhode Island courts. Rule 702 provides that:
 [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion.
The Rhode Island Supreme Court has held that "before admitting expert testimony, the trial justice must evaluate whether the testimony that a party seeks to present to the jury is `relevant, within the witness's expertise, and based on an adequate factual foundation.'" Kurczy v. St.Joseph Veterans Assoc., 820 A.2d 929, 940 (R.I. 2003) (quotingRodriguez v. Kennedy, 706 A.2d 922, 923 (R.I. 1998)).
In DiPetrillo, the Rhode Island Supreme Court discussed the standards governing whether a trial court should allow a jury to hear scientific testimony as evidence. Although our Supreme Court inDiPetrillo declined to adopt expressly the standards outlined by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals,Inc., 509 U.S. 579 (1993), our Supreme Court "drew guidance from the principles" established in Daubert. Owens v. Silvia, 838 A.2d 881, 890
(R.I. 2003) (citing DiPetrillo, 729 A.2d at 686).
In Daubert, the United States Supreme Court held that, under the Federal Rules of Evidence, a trial judge acts as a "gatekeeper" to "ensure that any and all scientific *Page 4 
testimony or evidence admitted is not only relevant, but reliable."Daubert, 509 U.S. at 589. In light of the Daubert decision, the Rhode Island Supreme Court held that when a party seeks to admit "novel, unvalidated scientific or complex technical evidence in a criminal or civil trial, the trial justice exercises a gatekeeping function by `holding a preliminary evidentiary hearing outside the presence of the jury in order to determine whether such evidence is reliable and whether the situation is one on which expert testimony is appropriate.'"DiPetrillo, 729 A.2d at 685 (quoting State v. Quattrocchi, 681 A.2d 879,884 (R.I. 1996)). According to our Supreme Court, "[t]he primary function of the trial justice's gatekeeping role is to assure that the proposed expert testimony, presented as a scientifically valid theory, is not mere `junk science.'" Owens, 838 A.2d at 891. "The trial justice must ensure that the parties present to the trier of fact only expert testimony that is based on ostensibly reliable scientific reasoning and methodology." Id. (citing DiPetrillo, 729 A.2d at 690). Thus, a trial justice may admit expert testimony "only if the expert proposes to testify `to (1) scientific knowledge that (2) will assist the trier of fact.'" Id. (citing DiPetrillo, 729 A.2d at 687).
"In addressing the first part of this two-part inquiry, often referred to as the `reliability' test, the trial justice examines four non-exclusive factors in determining whether expert testimony about novel or technically complex theories or procedures possesses scientific validity." In re Mackenzie C., 877 A.2d 674, 683 (R.I. 2005); but seeOwens, 838 A.2d at 891 ("Four non-exclusive factors can be helpful in determining if expert testimony about novel or technically complex theories or procedures possesses scientific validity." (emphasis added)). These factors are
 (1) whether the proffered knowledge has been or can be tested; (2) whether the theory or technique has been the subject of peer review and *Page 5 
publication; (3) whether there is a known or potential rate of error; and (4) whether the theory or technique has gained general acceptance in the scientific community.
Owens, 838 A.2d at 891 (quoting DiPetrillo, 729 A.2d at 689). The Rhode Island Supreme Court has held that "[s]atisfaction of one or more of these factors may be sufficient to admit the evidence and each factor need not be given equal weight in the analysis." Id. (citingDiPetrillo, 729 A.2d at 689). "The court may also consider the qualifications of the expert in determining whether the underlying methods are reliable." Id. (citing DiPetrillo, 729 A.2d at 689). However, our Supreme Court has held that, "especially when the proffered knowledge is neither novel nor highly technical, satisfaction of one or more of these factors is not a necessary condition precedent to allowing the expert to testify." Id. at 892 (citing DiPetrillo, 729 A.2d at 689).
In addressing the second part of the inquiry, the trial justice evaluates "the relevance of the proffered testimony in assisting the trier of fact to understand the evidence or to determine a fact in evidence." DiPetrillo, 729 A.2d at 689. To be admissible, the expert opinion must be "sufficiently tied to the facts of the case [such] that it will aid the [fact-finder] in resolving a factual dispute." In reMackenzie C., 877 A.2d at 684 (quoting Owens, 838 A.2d at 891 n. 3). "If the testimony `logically advances a material aspect of the proposing party's case,' . . . the court may deem it relevant and admissible."Id. (quoting Owens, 838 A.2d at 891 n. 3).
"[O]nce an expert has shown that the methodology or principle underlying his or her testimony is scientifically valid and that it `fits' an issue in the case, the expert testimony should be put to the trier of fact to determine how much weight to accord the evidence."DiPetrillo, 729 A.2d at 689-90 (citing Ambrosini v. Labarraque, 101 F.3d *Page 6 
129, 134 (D.C. Cir. 1996)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Owens, 838 A.2d at 892 (quoting Daubert, 509 U.S. at 690).
Pursuant to the first part of the DiPetrillo inquiry, this Court notes that NBC does not dispute Mr. Collins' qualifications to testify as a real estate appraiser. (NBC Reply Memorandum in Support of Its Motion to Preclude Expert Testimony at 2.) Moreover, NBC does not challenge Mr. Collins' appraisal methodology. (Id. at 3.) Instead, NBC challenges Mr. Collins' application of his appraisal methodology to the property at issue. (Id. at 3-4.) Based on Mr. Collins' testimony and credentials, the evidence clearly indicates that Mr. Collins is qualified to testify as a real estate appraiser and used methods generally accepted within the real estate appraisal profession and in compliance with the profession's standard literature, most notably The Appraisal of RealEstate.[1]
By essentially conceding the first part of the DiPetrillo inquiry, NBC's motion relies on the DiPetrillo inquiry's second part to argue that this Court should preclude Mr. Collins' testimony. NBC contends that Mr. Collins misapplied the standard appraisal methodology to the property at issue, thereby making his testimony useless to the fact-finder for understanding the evidence and determining facts at issue. In support of this contention, NBC alleges that Mr. Collins based key parts of his appraisal on inadmissible evidence. Specifically, NBC claims that Mr. Collins' appraisal should not have included: 1) lost gross rental income due to NBC's anticipated acquiring of the easements; and 2) a *Page 7 
valuation of the land necessitating the grant of a dimensional variance permitting Davol Square to build a fourteen-story building on the property.
First, NBC argues that, as a matter of law, Davol Square cannot claim lost gross rental profits allegedly resulting from NBC's plan to acquire temporary and permanent easements. Mr. Collins' appraisal report includes an assessment of the property's loss of value based on: 1) lost leases due to renters choosing not to lease property because of the easements; and 2) the reduction in rents paid by existing tenants. Mr. Collins has stated in his appraisal report that "the threat of an eminent domain taking can by itself impact property," and therefore, his report accounts for the lost leases and rent reductions in order to determine the land value that would put the owner, Davol Square, "in as good a position pecuniarily as [the owner] would otherwise have been if the property had not been taken." (Collins Report at 82 (quoting The Appraisal Institute, Real Estate Valuation in Litigation 17 (2d ed. 1995))).
The Rhode Island Supreme Court has not explicitly ruled on the admissibility into evidence of lost gross rental profits resulting from a planned easement. However, our Supreme Court has held that, in condemnation cases, "a property owner is entitled to just compensation for the fair market value of the property as of the date of taking."O'Donnell v. State, 370 A.2d 233, 236 (R.I. 1977). Furthermore, in Rhode Island, "the measure of damages applicable in the case involving a partial taking is the value of the land taken at the time it is taken, together with any special or peculiar damages which result to the remaining land." Hetland v. Capaldi, 240 A.2d 155, 157 (R.I. 1968). In other jurisdictions, state courts have generally held that "mere plotting or planning in anticipation of an improvement does not constitute a taking or damaging of the property *Page 8 
affected where the government has not imposed a restraint on the use of the property." National By-Products, Inc. v. City of Little Rock,916 S.W.2d 745, 749 (Ark. 1996) (citing Westgate Ltd. v. State,843 S.W.2d 448 (Tex. 1992); Lone Star Ind. v. Sec. of Kan. Dept. of Transp., 671 P.2d 511 (Kan. 1983)). The Texas Supreme Court, for example, found that
 [c]onstruction of public-works projects would be severely impeded if the government could incur inverse condemnation liability merely by announcing plans to condemn property in the future. Such a rule would encourage the government to maintain the secrecy of proposed projects as long as possible, hindering public debate and increasing waste and inefficiency. After announcing a project, the government would be under pressure to acquire the needed property as quickly as possible to avoid or minimize liability. This likewise would limit public input, and forestall any meaningful review. . . .
Westgate, 843 S.W.2d at 453. Additionally, in State v. Vaughan,319 S.W.2d 349 (Tex. Ct. App 1959), the Texas Court of Appeals held that a property owner could not introduce evidence of lost rents from tenants vacating a property subject to a taking, because
 [t]he mere fact that tenants learn of contemplated condemnation and because of such information elect to vacate the property does not afford the owner the right to recover damages from the State because there has been neither a taking or any character of a physical invasion of the property. . . .The loss of tenants and the resulting loss of rentals was . . . incidental or consequential to the taking of the entire property by the State and for which reason the State is not liable for such consequential damage.
Vaughan, 319 S.W.2d at 354-355 (citing City of Houston v. Wall,207 S.W.2d 664, 670 (Tex.Civ.App. 1948)). *Page 9 
In this case, the easements did not prevent Davol Square from continuing to use the property for commercial and retail purposes during the time period after the announcement of the taking in Spring 2001, but before the temporary and permanent takings that NBC enacted on April 4, 2003. In light of the important policy considerations, this Court holds that evidence of losses occurring during that time period are not relevant in this case and is therefore not admissible at trial. Mr. Collins may not testify about lost gross rental profits at trial, because his testimony in this regard would no longer advance a material fact in this case.
NBC has also alleged that Mr. Collins cannot testify that the Davol Square property's "highest and best use" — the most advantageous and valuable use of the property — is a fourteen-story mixed-use condominium complex, because current zoning regulations impose a height restriction of seven stories or ninety feet. Furthermore, NBC contends that the zoning regulations allow for a maximum height variance of only twenty-five percent — well short of the height needed for a fourteen-story building. See Providence Code § 420.4. NBC also challenges Mr. Collins' conclusions about the financial feasibility and physical probability of his proposed "highest and best use." Davol Square counters that Mr. Collins properly followed his professional obligations as an appraiser in determining both the land value for a building permitted under current zoning regulations and the land value based on the value of comparable properties.
The Rhode Island Supreme Court has held that "an appraiser in condemnation proceedings is allowed to consider all uses to which condemned land is or might reasonably be put. Compensation [therefore] should be based on the most advantageous and valuable use." Conti v.R.I. Econ. Dev. Corp., 900 A.2d 1221, 1239 (R.I. 2006) *Page 10 
(quoting Sweet v. Murphy, 473 A.2d 758, 761 (R.I. 1984)). Thus, "[t]he sum required to be paid the owner of land does not depend on the uses to which he has put it but is to be ascertained by just consideration of the uses for which it is suitable." Id. (quoting Sweet,473 A.2d at 761). Furthermore, our Supreme Court has "reaffirmed the principle that condemned land must be assessed according to its fair-market value in light of existing zoning restrictions and not on the basis of an unlawful use." Id. (quoting Ocean Road Partners v. State, 670 A.2d 246,250 (R.I. 1996)). However, this Court "may consider a use for which present zoning restrictions do not readily allow if the party can establish a reasonable probability that the use will be made allowable in the near future." Id. (citing (quoting Ocean Road Partners,670 A.2d at 250). In a condemnation proceeding, "a witness's opinion that there is a reasonable probability that the subject property will be rezoned within the near future . . . is admissible if based on evidence that the probability of rezoning is not purely speculative, or such rezoning remote. Hunt v. Director of Pub. Works, 206 A.2d 91, 94-95 (R.I. 1965) (holding that a real estate expert could testify that a tract of land zoned for district residences and two-story apartments had a high probability of being rezoned to allow high-rise apartment buildings). Although NBC may disagree with the conclusions that Mr. Collins reached in his appraisal, NBC has not shown that Mr. Collins improperly used the standard methodology used by his profession. Additionally, NBC has not demonstrated that Mr. Collins' testimony cannot establish a reasonable probability of obtaining zoning relief. This Court finds that evidence relating to Mr. Collins' assessment of the "highest and best use" of the Davol Square property will assist this Court in determining the facts of the case. Thus, Mr. Collins' expert testimony addresses an important issue in the case. Therefore, this Court *Page 11 
will allow Mr. Collins to testify at trial in order to determine how much weight to afford his appraisal, and NBC will have the opportunity to make a rigorous cross-examination of the witness.
 CONCLUSION
This Court finds that Mr. Collins' proffered testimony regarding the "highest and best value" of the Davol Square property will assist the Court, as the trier of fact, to determine what, if any, damages Davol Square sustained due to NBC's taking. Davol Square, however, may not introduce testimony or evidence regarding lost gross rental profits at trial. Within the limits stated above, Mr. Collins can provide his expert opinion based on his personal knowledge of the property at issue, his interviews with individuals directly involved with that property, and the results of his real estate appraisal. This Court will evaluate the credibility of each expert's testimony to the extent that either party calls on expert witnesses at trial. NBC will have the opportunity to explore any weaknesses in Mr. Collins' testimony on cross-examination and through the testimony of experts of its own. Accordingly, this Court denies NBC's motion in limine to exclude Mr. Collins' testimony regarding the "highest and best use" of the Davol Square property, but grants NBC's motion to exclude evidence of lost gross rental profits.
[1] The Appraisal Institute, The Appraisal of Real Estate (12th ed.)