DECISION
This matter came on for trial without intervention of a jury on the question of "just compensation" for the taking of land owned by the Petitioners in the Town of Lincoln, Rhode Island. The parcel comprised 8.83 acres. The land in question is known as Lot 41 on Assessor's Plat 26 in the Town of Lincoln (Town) and was taken by the Town for public school purposes per G.L. 1956 § 16-9-7.
The date of the taking of this property is September 10, 2004. The land in question was vacant land and was taken in conjunction with three other abutting parcels which are not subject of this lawsuit.
The Town valued the Truppa property at $406,325 and deposited this amount with the Registry of the Court. The Petitioners withdrew this sum from the Court Registry in February of 2005 and filed this petition timely for the assessment of damages pursuant to § 16-9-7 averring in its petition that the amount placed in the Registry was not just compensation.
The Court heard testimony from five witnesses during the course of the trial. The Petitioners presented Thomas M. Ross of Andolfo Appraisal Associates, Inc., a certified General *Page 2 
Appraiser, and Steven M. Clark, P.E., a principal of Commonwealth Engineering and Consultants of Providence, P.C.
The Respondent, Town of Lincoln, presented three witnesses: William E. Coyle, III, a certified Appraiser of William E. Coyle, Jr. and Associates; Scott D. Lindgren of Pare Corporation of Lincoln, Rhode Island, a Professional Engineer; and, N. Kim Weigand, a Professional Engineer who was the Lincoln Town Engineer from 2002 to 2009.
All of the witnesses who were presented possessed the professional qualifications in their respective fields and the level of experience necessary to testify as to their opinions in this case.
There were twenty-seven exhibits introduced in this case — twenty-three by the Petitioners and four by the Respondent.
All witnesses in the case agreed that the highest and best use of the subject property was residential development. The parties differed widely on the "just compensation" figure for the taking, the Town at $406,325 for a five lot development and the Petitioners at $905,000 for a six lot development. The Petitioners also presented evidence for a five lot subdivision which they valued at $775,000, although they felt a six lot subdivision was appropriate.
The parties also differ widely on the "cost" of development of the site and on the nature and the value of the comparable sales used by each side to establish its "just compensation" value for the taking.
The Petitioners argue that Respondents' appraiser "missed" sales closest to the taking date that greatly affected the value of the proposed residential development. The Respondents have argued that the comparable sales chosen and analyzed were appropriate for inclusion in determining "just compensation" for each of the lots created by the proposed subdivision.
The issues presented to the Court in this case therefore are: *Page 3 
 1) The number of lots that could have been reasonably created from the subject property.
 2) The Cost of developing this project whether it be a five or six lot subdivision.
 3) The cost of the individual lots created based upon comparable sales figures contrasted with the subject property and the deduction for cost of development leaving a "just compensation" figure for each lot created.
In addition to its six lot proposal, the Petitioners also submitted plans and a proposal for a five lot development for a residential subdivision which Petitioners valued at $775,000.
The Respondent updated its original appraisal with more detailed information regarding the costs of development and adjustments for the date of taking which Respondent avers prove the Petitioners were overcompensated for the taking at $406,325 in September of 2004. The measure of damages in this case for property taken pursuant to § 16-9-7 is the fair market value of the property, J.W.A.Realty Inc. v. City of Cranston, 399 A.2d 479, 482 (R.I. 1979), and that value must be assessed as of the date of the taking,O'Donnell v. State, 370 A.2d 233, 236 (R.I. 1977), and the value determined must be based on the "highest and best Use" of the property. Sweet v. Murphy, 473 A.2d 758, 761 (R.I. 1980).
It is well settled that the comparable sales method is preferred which compares prices for real estate paid for in the open market and the comparison of substantially similar properties which may be adjusted for minor differences between the subject properties and the land taken to establish the fair market value of the taken property.
The Petitioners presented testimony for the creation of a six lot subdivision as well as testimony for a five lot subdivision should this Court find that a five lot subdivision is appropriate. *Page 4 
The Respondent presented testimony from two of its experts that a six lot subdivision could not be obtained given local ordinances and topographical limitations and that only a five lot subdivision could be developed.
N. Kim Weigand, the Respondent's Town Engineer, testified to a four lot subdivision as being feasible. N. Kim Weigand demonstrated the most familiarity with the subject parcel having walked it several times and because of her association with the Town as Town Engineer and her knowledge of state statues and local ordinances.
Mr. Clark for the Petitioners testified he did not walk the site but relied on earlier work developed by DiPrete Engineering in developing his six lot concept for development. (Ex. 7.) Mr. Scott Lindgren and William Coyle, III, for the Respondent, testified to a five lot feasibility for the subject property. Both testified to their personal familiarity with the site, Mr. Lindgren from visiting it personally and Mr. Coyle from his extensive experience with the area in general and the site in particular, having appraised over l,000 parcels in the Town of Lincoln.
The Court finds as a fact that the collective testimony of N. Kim Weigand, Scott Lindgren and William Coyle, III, regarding their knowledge of this subject parcel, its topographical and environmental limitations and deficiencies, the drainage problems which would have to be considered by a developer, and the local ordinances that would have to be complied with in development, that a six lot subdivision for these reasons could not be achieved in the development of the subject property.
Lot 6 in the conceptual plan presented by the Petitioners was extremely odd shaped and per the testimony of the Respondent's experts would be improbable of meeting said local ordinances and requirements for lot size and configuration. Accordingly, the Court finds as a fact and as a matter of law that only a five lot subdivision could be created on the subject parcel. *Page 5 
The parties differed widely on the costs that would have to be incurred in the development of this five lot subdivision. The Petitioners' experts testified to a minimalist approach to cost analysis, claiming that the project was small and would not be of long duration, thus not requiring many of the traditional costs normally incurred by a developer involved in a large project. The Respondent took a more traditional view in estimating the costs for development of a five lot subdivision and included many items which the Petitioners felt were not required. The Petitioners took issue with Respondent's Exhibit C, prepared expenses by Mr. Lindgren. This exhibit included costs for removal and stockpiling of soil off site for approximately $11,000, a retaining wall figured at $18,000, and an overestimation of the number of street trees required by ordinances for an overestimation of $18,000. Respondent also budgeted for a chain link fence and a swing gate to surround a drainage area which Petitioners argued was not required by ordinances nor was this fence and gate installed around the drainage areas at the completed school. The cost for these items was $26,000 for both items. Changes for installation of electric and telephone cable was estimated at $20,000; however, Mr. Lindgren agreed that these changes are usually absorbed by the utility in question. Respondent also figured a $40,000 performance bond was necessary which Petitioners argued would be returned to the developer at the completion of the project.
The Petitioners argued that approximately $116,000 included in the Respondents' estimate (Ex. C) were not necessary to develop this five lot subdivision.
Mr. Coyle for the Respondent had updated his estimate for cost of development from his earlier estimate of $258,750 which resulted in Respondent's value of $406,325. In his updated report, Mr. Coyle considered costs of $932,000 for development of the project which he testified indicated the Respondent had actually overpaid the Petitioner in the payment of $406,325. *Page 6 
Thomas Ross, for the Petitioner, estimated the cost of development for a five lot subdivision to be $292,570.00. (Ex. 16.) He based this estimate on discussions with engineers, from his own experience, and based on a 640 foot long roadway, storm drainage considerations, and water and sewer hookups and installation. This contrasts sharply with the cost estimate of Mr. Lindgren (Ex. C) which came to $665,000 for costs of development. As noted earlier, many of his proposed expenses are disputed by the Petitioners' experts and it is not clear from the record whether Mr. Lindgren's estimate is for a five or six lot subdivision.
As previously discussed, Mr. Coyle's costs in his initial analysis which let to his figure of $406,325 as just compensation was $258,750 for costs of development, which included a sewer pump as apposed to a sewer system based on gravity, an expense which was not incurred in the building of the school on the subject property by the Town. This earlier figure is in sharp contrast to Mr. Coyle's update prior to trial where he estimated costs of development now to be $932,500 — resulting in his opinion at trial that the Respondent overpaid the Petitioners at the $406,325 figure.
This widely divergent analysis of costs is troublesome to the Court and will be addressed further. In addition to the above dichotomy in cost analysis, there is a wide difference of opinion as well in the actual valuation of the subject property by Mr. Coyle and Mr. Ross. The comparable sales designated by each witness vary to a slight degree regarding location in relation to the subject property and with regard to the time of sale of each comparable in relation to the time of the taking by the Town.
The Respondent essentially argues that the comparable sales chosen by Mr. Ross for the Petitioners are not in fact comparable to the subject property, that the sales chosen were based on sales which occurred after the date of taking, and that these increases in value skewed the *Page 7 
analysis of the Petitioners. In addition, the Respondent asserts that the values attributed to the comparables and the subject property were over valued and that its cost analysis for development were grossly underestimated.
The Petitioners aver that the Respondent's comparables were too remote in time to reflect true market value at the time of the taking of the subject property on September 10, 2004, and that the Respondent's appraiser, Mr. Coyle, missed two comparable sales used by the Petitioners which were closer in time to the date of taking. That Mr. Coyle had indeed used two of the same parcels as the Petitioners but the sales were in 2002 and 2003, which Petitioners believe was too remote in time.
Mr. Ross selected six comparables in the general vicinity of the subject property. Two of the sales he selected were sales that occurred after the taking, both on Alyssa Lane, one sale was in October 2004 for $285,000 and the other in May of 2005 for $380,000. He also selected two sales on Pine Tree Lane, both sales occurring on August 10, 2004, one month prior to the taking on September 10, 2004. He also evaluated one parcel on Great Meadows Lane sold on June 14, 2004, and one on Meadow Lane on July 22, 2004. Mr. Ross, after various adjustments for time, location and condition, evaluated the comparables at $330,000 each. His value for a five lot subdivision was $1,650,000.
Mr. Coyle evaluated six properties in the area which were sold between October 2002 and August 2003. He chose four parcels on Alyssa Lane, three of which closed in December 2002 and one in August of 2003. He chose one sale on Meadow Lane which closed on June 30, 2003. Mr. Coyle making his adjustments for time, location and condition valued each lot at $250,000 for a five lot subdivision for a total value of $1,250,000. *Page 8 
The Court, therefore, was presented with two opinions that were $400,000 apart, as well as costs of development which were divergent as well. Mr. Coyle opined that the parcels he selected were most appropriate and most like the subject property where Mr. Ross averred that Mr. Coyle had overlooked or missed three sales in 2004 which clearly showed an increase in value of parcels in the area. Both appraisers evaluated the same lot on Alyssa Lane and in Respondent's Exhibit D, Mr. Coyle added Great Meadows Lane which was also evaluated by Mr. Ross — both sales occurring in June of 2004. The sales price of this parcel was $300,000. Mr. Ross adjusted the sale upward to $339,000 while opining that it was inferior to the subject property, while Mr. Coyle evaluated the parcel at $255,000 — giving it a fifteen percent reduction for location.
Mr. Coyle's opinion states that the comparable sales evaluated by him were in better locations surrounded by very expensive homes that are superior to any houses located near, or which are visible from the subject property along the portions of Jenckes Hill Road. This resulted in Mr. Coyle's opinion that lots on the subject property would have a value of $250,000 each. Mr. Ross' analysis differs from Mr. Coyle's regarding time of sale and significantly higher values, and while the sales chosen by each appraiser are similar in location and time of sale, a wide divergence of opinion as to value has been expressed by each.
 Conclusion
The Petitioners in an action of this nature has the burden of proving by a fair preponderance of the evidence that the Petitioners did not receive just compensation when its land was taken by the Respondent for public school purposes. The Court in its analysis of this case finds as a fact and as a conclusion of law that the Petitioners have not satisfied their burden by a fair preponderance of the evidence. The Court finds that a five lot subdivision could be *Page 9 
developed on the subject property — not a six lot subdivision as primarily urged by the Petitioners due to constrictions of shape, drainage and topographical impediments enumerated supra.
That the costs initially expressed by both the Petitioners and the Respondent are reasonably similar in nature and closely represent the actual build-out costs. That the detailed cost analysis of Mr. Lindgren must be discounted because of the plethora of errors contained therein as pointed out by Respondent at trial which total almost $200,000 in costs which would not have been necessary to complete the development.
That the opinions expressed by Mr. Coyle for the Petitioners, his reasoning for determining a value of $250,000 per lot in a five lot subdivision having a value of $1,250,000, his selection of comparables appears to the Court to more closely represent the true value of the subject parcel.
That the appraisal of Mr. Ross containing two parcels with sales one month prior to the taking and two parcels sold and evaluated after the taking do not reflect the true state of the real estate market as it existed at the time of the taking.
That Mr. Coyle's assessments, although more remote in time prior to the taking, contained appropriate adjustments which more probably than not reflected market conditions and values at the time of the taking.
The Court concludes and finds as fact and as a matter of law that the original figures produced by the Petitioners' appraiser, Mr. Coyle, were reflective of the true market value of the subject property and represented "just compensation" to the Petitioners.
For the reasons stated above, the Court therefore denies the petition of the Petitioners and finds for the Respondent, that $406,325 constituted just compensation for the Petitioners.
An Order may enter in accordance with this Decision.