(172 App. Div. 863; 173 App. Div. 990)

## ORLEANS COUNTY QUARRY CO. v. STATE.

(Supreme Court, Appellate Division, Third Department.   May 3, 1916.)

1. EMINENT DOMAIN ⚙═➤305—QUARRY PROPERTY—AWARD—SUFFICIENCY.

   In a proceeding for damages for appropriation of 7.301 acres of land containing quarries, award of the Board of Claims of $76,327.54, with interest, *held* excessive, and against the evidence.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 815; Dec. Dig. ⚙═➤305.]

2. EMINENT DOMAIN ⚙═➤303—QUARRY PROPERTY—MEASURE OF DAMAGES.

   In a proceeding for damages for appropriation of land containing three quarry properties, the Board of Claims valuation of the land, by figuring the probable amount of stone in the ground and giving the claimant that value, was erroneous, since it ignored the question of profits from their operation and contingencies of the business.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 815–817; Dec. Dig. ⚙═➤303.]

3. EMINENT DOMAIN ⚙═➤303—QUARRY PROPERTIES—PROFITS—INTEREST AND IMPROVEMENTS.

   In such proceeding, land containing three quarry properties, the reasonable interest upon a fair valuation of the property involved, and a fair average of the improvements and equipment, should enter into the expense account in determining the profits of the quarry business.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 815–817; Dec. Dig. ⚙═➤303.]

4. EMINENT DOMAIN ⚙═➤303—QUARRY PROPERTY—MEASURE OF DAMAGES—QUANTITY AND QUALITY OF PRODUCT.

   In such proceeding the locality and nature of the property, the quantity and quality of the stone, the profits from operation, and the cost of getting stone out ready for market, were elements to be considered in determining the value of the property.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 815–817; Dec. Dig. ⚙═➤303.]

Appeal from Board of Claims.

Proceeding by the Orleans County Quarry Company against the State of New York.   From a determination and award, made by the Board of Claims May 20, 1915, of $76,327.54 for the appropriation of 7.301 acres of land, with interest, amounting in all to $94,477.08, the State of New York appeals.   Determination reversed on the law and the facts, and new trial granted.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Egburt E. Woodbury, Atty. Gen. (E. C. Aiken, Asst. Atty. Gen., of counsel), for the State.

Griggs, Baldwin & Baldwin, of New York City (Martin Conboy, of New York City, of counsel), for respondent.

JOHN M. KELLOGG, P. J.   **[1-3]** The land appropriated was three quarry properties in the town of Murray, Orleans county.   The Board of Claims valued the land appropriated by figuring the probable amount of stone in the ground and giving the claimant that value.   The quarries had in fact been opened and worked intermittently from time

---

to time.  A careful perusal of the evidence, however, does not indicate that they were uniformly worked at a profit.  The quarries of the defendant were not worked uniformly at a profit.  If interest charges and the equipment and renewals supplied from time to time are taken into account, its business was hardly profitable.  In determining the profits of the quarry business, the reasonable interest upon the fair value of the property involved must be considered as an expense, and a fair average of the improvements and equipment should enter into the expense account, as apparently from the accounts the item of expenditures for improvements and equipment each year is quite large.  The evidence indicates that no quarry property in that vicinity was ever sold upon the basis adopted by the Board of Claims, but such property uniformly sells at an acreage value, and no property has been sold upon an acreage valuation for real money's worth for more than $1,000 per acre, that apparently being much more than an average price.

It is evident, from the accounts of the claimant with reference to its various quarries, that the cost of stone produced from the quarries ready for market is not at all uniform, and that the results from some quarries may be profitable, while at the same time the result from a nearby quarry proves unprofitable.  These quarries had in fact been opened and worked, but there is nothing to show with reasonable certainty that they could be worked at a substantial profit.  If the quarries were valuable, and a profit was sure to arise from their working, it is difficult to say why operations were not carried on in them all the while, for some of the quarries worked by the defendant produced little, if any, profit, and we cannot assume that they would work the unprofitable quarries and leave unworked the more profitable ones.  There are contingencies and uncertainties in every business, and apparently from the accounts and the evidence there is no certainty that these quarries can be operated for any considerable length of time at a profit.  Evidently in this locality the margin of profit in working a quarry is small or doubtful.  It seems unreasonable that the Board, in fixing the price of this property, should lay aside the usual rule of measuring the value of such properties and adopt a rule never used in that locality.

[4]  Undoubtedly the proof as to the quantity and quality of the stone was important, and the cost of getting it out ready for market; but these are elements only to be considered with others in determining the value of the property.  There is no limit to the value of a quarry or sand bank or clay bank, if an estimate can be made of the amount of stone, sand, or clay which can be taken, and a fixed price put upon it.  Such computation ignores to quite an extent the loss and contingencies of the business.  The Board should properly take into consideration the nature of the property, that it is in a locality where there are valuable quarries, and that there are quarries upon it, and that it has a value greater than farming lands, and should give consideration to the evidence as to the quality and quantity of the stone which may be quarried; but the fact remains that there are many quarry lands in the locality, and such lands have only been sold by the

acre, and if all the quarry land in Orleans county can be sold by fixing the value of the stone in situ, the wealth of the county is beyond reasonable estimation. The Board did not pay attention enough to the other circumstances bearing directly upon the value of this property, and gave too much attention to the expert evidence and the estimates of the profits derived from the quarry business. The award is clearly excessive.

The determination should therefore be reversed, and a new trial ordered, without costs to either party.

The court disapproves of the finding that the land was of the value of $76,327.54, and finds that the determination of the Board of Claims is against the evidence, and the recovery excessive. All concur.