**UNITED STATES v. 5 ACRES OF LAND, MORE OR LESS, SITUATE IN THE TOWN OF BABYLON, SUFFOLK COUNTY, NEW YORK, et al.**

No. 691.

District Court, E. D. New York.

May 11, 1943.

70

Harry T. Dolan, Sp. Asst. to the Atty. Gen., for petitioner-plaintiff.

Roe & Kramer, of New York City (Clinton T. Roe, of New York City, of counsel), for defendant Edwin C. Goddard.

CAMPBELL, District Judge.

This was a hearing held before me solely for the purpose of determining the value of five acres of land acquired by condemnation, and by declaration of taking, located at Farmingdale, in the Town of Babylon, County of Suffolk, and State of New York. The parcel is rectangular in shape, situated on the westerly side of New Highway, and northerly of Long Island Railroad, and is bounded on the north by land, now or formerly of Graham, on the east by New Highway, on the South by Long Island Railroad, and on the west by land now or formerly of Graham.

The property was acquired by the former owner, the defendant Edwin G. Goddard, in August 1938, from the then owners and operators of a pickle factory located thereon, for the total consideration of $2,850, that is, at the rate of $750 per acre.

The defendant Goddard was, at the time of the acquisition of the subject property, one of the officers of the Farmingdale Sand & Gravel Company, which owned and operated a sand and gravel business on the property lying immediately to the west, but which sand and gravel business was leased by the Farmingdale Sand & Gravel Company to J. W. Robins & Sons in 1938, and has since been operated by said lessee.

The declaration of taking vested title in the petitioner-plaintiff on September 29th, 1942.

The land in the vicinity of the subject property seems generally to be sand and gravel bearing.

While the defendant made but one boreing on the subject property, and I would be unwilling to speculate as to the exact quantities of sand and gravel that might be taken therefrom, it is safe to say that a considerable quantity could, under favorable conditions, be taken from the property, but, even if that be so, the defendant can not, under the weight of authority, establish the value in the way he has chosen, as the valuation of the sand and gravel found underground can not be separated from the land, but if it is to be considered, it must be considered in determining the value of the land.

Too many elements enter into the business of taking from the land the sand and gravel underneath the surface; the continuance of the demand, the executive and business ability of those engaged in the operation, the length of time that will be required to elapse before there is any real demand for the sand and gravel, labor conditions relating to hours of labor, minimum wages and all other expenses that may be connected with the production and merchandising of the sand and gravel, the comparatively small demand for sand and gravel in the vicinity of the subject property,

which is shown by the fact that such a small portion of the sand and gravel land in the neighborhood has been used for its production.

The method pursued by the defendant, in showing, by its expert, of the probable quantity of sand and gravel to be found below the surface, the probable expenses of machinery and operation in the future are too speculative, and the attempt to value the land in such a manner has been condemned by the weight and authority of judicial decisions. Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Meyer, 7 Cir., 113 F.2d 387, 397; United States v. Indian Creek Marble Co., D.C., 40 F.Supp. 811, 822; Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884, 888; Orleans County Quarry Co. v. State of New York, 172 App. Div. 863, 159 N.Y.S. 30; New York Central R. R. Co. v. Maloney, 234 N.Y. 208, 218, 137 N.E. 305; Matter of Simmons, 58 Misc. 581, 590, 109 N.Y.S. 1036; United States v. Certain Lands in Town of Highlands, D. C., 45 F.Supp. 126; Sparkill Realty Corp. v. State of New York, 268 N.Y. 192, 197 N.E. 192.

The last above entitled case was retried and reappealed, and the final award was later confirmed in 279 N.Y. 656, 18 N.E.2d 301.

It does not, however, appear that the principles condemned in the earlier decision were ever modified, or repudiated.

■ If the property has a market value because of sand and gravel deposits located therein, that should be shown, not in the manner attempted by the defendant, but, by showing what similar properties containing like deposits of sand and gravel have been sold for, in this vicinity, within a period not too remote from the date of taking.

Edwards, the only real estate expert called by the defendant, predicated his opinion of value entirely upon profit factors of the sand and gravel, and not upon sales of similar properties containing sand and gravel deposits which have been made in the vicinity in past years, and I reject such, as based upon an improper method.

The petitioner-plaintiff offered as evidence of the fair market value of the subject property, the testimony of a duly licensed real estate broker, and appraiser, in Nassau and Suffolk Counties, who has been engaged in that business for over twenty years, and had made many sales of property in these counties, both on his own behalf, and as agent and broker for others.

He has appeared in this Court as an expert for the Government in other cases of condemnation of real property involving other property in the vicinity and neighborhood of the subject property.

He testified that the best and highest adaptable use for the subject property was, for business use, for which it was zoned, and I believe that to be true, at the time of the taking, but it was due largely to war activities, and the demand for the subject property for such purposes may not extend beyond the duration of the war, whereas the property did have a permanent value due to the deposits of sand and gravel, which the ordinary purchaser, not one who required the property for expansion of a going business or factory, would undoubtedly consider.

The deposits of sand and gravel will always be a factor in determining the value of the land.

There is considerable land in the immediate neighborhood of the subject property, which contains deposits of sand and gravel.

While the appraiser was familiar with other sales of property in the vicinity of the subject property, he was cross-examined as to only one.

The evidence does not show that there was any active market for property with sand and gravel deposits at the time of taking, as there were a number of such properties located throughout this entire area, and many of them were out of business, and some were operating only spasmodically.

■ In determining the fair market value of the property taken, we must not over-look its frontage of 318.67 feet on New Highway, and its frontage of 345.48 feet, and additional frontage of 278.72 feet on a curve on the Long Island Rail, both of which factors are important when the property is used for business purposes generally, or for the business of the removal of sand and gravel, and a valuation of eight hundred dollars an acre is in my opinion too low.

■ Little weight can be placed upon the price which the defendant Goddard paid for the subject property in 1938, as conditions radically changed in the vicinity of the subject property between 1938 and the date of the taking.

■ I viewed the premises in question on March 20th, 1943, but such viewing was after the Government had taken possession of the property.

I find and award for the five acres of land so taken, as aforesaid, $7,000.