## HERNDON v. HOUSING AUTHORITY OF CITY OF DALLAS.

### No. 14679.

Court of Civil Appeals of Texas. Dallas.

July 24, 1953.

Rehearing Denied Oct. 9, 1953.

Henry Tirey and Waller M. Collie, Jr., Dallas, for appellant.

Scurry, Scurry & Pace, Ethan B. Stroud and Ralph Wood, Jr., Dallas, for appellee.

DIXON, Chief Justice.

On motion for rehearing, the opinion handed down in this case on June 5, 1953 is withdrawn and the following is substituted therefor:

This is a condemnation suit. Appellant was owner of land fronting 143 feet on Singleton Boulevard in the City of Dallas. The whole of the tract of land was taken. The improvements on the land consisted of a brick store building in which appellant operated a grocery; a frame building in which appellant operated a cafe; and a frame residence in which appellant lived. A jury in a County Court at Law by its verdict fixed the market value of the property at $37,186.

Appellant's first point is that the trial court erred in refusing to give the following instruction to the jury:

"You are further instructed that the value of the land condemned is not to be estimated simply with reference to the condition in which the owner has maintained it or the use to which it is put at the time in question, but with reference to any use to which it is reasonably adapted. The best or most valuable use to which the land in question is adapted should be considered."

■ We do not doubt that the requested instruction was a correct statement of one of the several elements that go to make up market value. But we do not believe that it was error for the trial court to refuse to give the instruction. A correct definition of market value was given to the jury. Evidence was admitted showing the various uses to which the property could be put. It was proper to admit such evidence—in fact it was proper to admit evidence as to any or all of the various elements going to make up market value, including the best and most valuable use to which the property was adapted. Appellant's attorney in his argument to the jury might have, and perhaps did, call the jury's attention to such evidence and its importance in determining market value. It was of course proper for the jury to consider it in reaching their verdict. But why should it be necessary for the court to tell the jury that they should consider evidence which had been introduced and argued before them? The fact that the court permitted the evidence to be introduced and argued ought to make

it obvious to the jury that it was proper for them to consider it.

■ This question has been considered by our Supreme Court, and here is what the Supreme Court said:

" * * * in submitting the simple issue of the difference in the market value before and after, it seems to us proper that same should be submitted without instructions from the court, other than the formal definition of market value. It appears to us that in most if not all cases the whole matter of what may be considered by the jury and what may not be considered will be best determined by the trial court in the admission and exclusion of testimony rather than by instructions to the jury. In that way the possibility of instructions upon the weight of the evidence, and also the possibility of the jury allowing damages upon the basis of special items, rather than determining the ultimate question of the difference in market value, will be avoided." State v. Carpenter, 126 Tex. 604, 89 S.W. 2d 194, page 200. This Court has made similar holding in Kennedy v. City of Dallas, 201 S.W.2d 840. Appellant's first point is overruled.

■ Appellant offered evidence of the gross revenue and the profits derived from the grocery business and the cafe business which he operated on the real estate in question. This evidence was offered, not as a separate item of damage, but as evidence of the market value of the real estate. The court refused to admit the testimony. Appellant in one of his points on appeal says the court erred in so ruling.

This very question is the subject of an annotation in 7 A.L.R. 163. Here is the rule as stated on page 164 in the annotation:

"With remarkable unanimity the American jurisdictions hold that evidence of profits derived from a business conducted on property is too speculative, uncertain, and remote to be considered as a basis for computing or ascertaining the market value

of the property in condemnation proceedings."

The reasons generally given to support the rule are: (1) Ordinarily the amount of profit depends more upon the capital invested, general business conditions, and the trading skill and business capacity of the person conducting it than it does upon the location of the business. Gauley & E. R. Co. v. Conley, 84 W.Va. 489, 100 S.E. 290, 7 A.L.R. 157; and (2) it is only the real estate which is being taken, not the business. The owner may keep his business and continue to operate it at a different location. State v. Cerruti, 188 Or. 103, 214 P.2d 346, at page 349, 16 A.L.R.2d 1105. The authorities supporting the rule are numerous and we shall cite only a few: Armory v. Commonwealth, 321 Mass. 240, 72 N.E.2d 549, at page 560, 174 A.L.R. 370; Sowers v. Schaeffer, 155 Ohio St. 454, 99 N.E.2d 313; State v. Cerruti, 188 Or. 103, 214 P.2d 346, 16 A.L.R.2d 1105; Housing Authority, etc., v. Lustig, 139 Conn. 73, 90 A. 169; Orgel on Valuation under Eminent Domain, 529, sec. 161; 2 Nichols on Eminent Domain, 2nd Ed., 1173, sec. 446; 2 Lewis on Eminent Domain, 1273, sec. 727; 18 Am.Jur. 988, sec. 345.

The rule above referred to should not be confused with the rule, accepted by most courts, which permits evidence of rents and profits derived from the intrinsic nature of the real estate itself, as distinguished from profits derived from a business operated on the land. 65 A.L.R. 455 (Annotation); In re State Reservation, 102 N.Y. 734, 7 N.E. 916; City and County of Denver v. Quick, 108 Colo. 111, 113 P.2d 999, 134 A.L.R. 1120; 134 A.L.R. 1125 (Annotation). For example, when a stone quarry is located on condemned land, the owner may show his profits from the quarry business because it is part of the intrinsic nature of the land itself. Orleans County Quarry Co. v. State, 172 App.Div. 863, 173 App.Div. 990, 159 N.Y.S. 30; Seattle & M. R. Co. v. Roeder, 30 Wash. 244, 70 P. 498. This rule is applicable to agricultural lands, State v. Cerruti, 188 Or. 103, 214 P.2d 346; Korf v. Fleming, 239 Iowa 501, 32 N.W.2d 85, 3 A.L.R.2d 270; lands suitable for raising

livestock and dairy products, City and County of Denver v. Quick, supra; toll roads and bridges, Lebanon & Nashville Turnpike Co. v. Creveling, 159 Tenn. 147, 17 S.W.2d 22, 65 A.L.R. 440; and other types of real estate as shown in the annotations above cited.

The difference in the two rules is discussed in City and County of Denver v. Quick, supra; in State v. Cerruti, supra; and in the annotation in 134 A.L.R. 1125. The distinction is also recognized in the Introductory to the annotation in 65 A.L.R. 456:

"The scope of this annotation has been carefully confined to those cases that deal only with income, such as profits from rents, that is derived from the intrinsic nature of the property itself; *and not from a business conducted on the property.*" (Emphasis supplied.)

The cases cited by appellant on this point are all cases in which there was only a partial taking of the land. It has been held, where only part of an owner's land is taken, that he may show the resulting injury to his business, not as a separate item of damage, but as affecting the market value of the remaining land and improvements for the uses to which they were adapted and were being put. City of Dallas v. Priolo, Tex.Sup., 242 S.W.2d 176; Milam County v. Akers, Tex.Civ.App., 181 S.W.2d 719. In the case before us, a different rule is applicable for this is a whole taking of the real estate only. The appellee is not condemning the grocery and cafe business owned by appellant. The condemnation is an invasion and taking over of all of appellant's interest in the real estate, but it is not even a partial taking or direct touching of appellant's interest in the two businesses. Appellant retains his entire interest in said businesses and may continue to operate them, though of course he must move them to a new location. In re Edward J. Jeffries Homes Housing Project, 306 Mich. 638, 11 N.W.2d 272. No case has come to our attention involving a whole taking such as the one now before us, in which it is held that earnings and profits from a busi-

ness operated on the land are proper elements in determining the market value of the land. We believe the correct rule in a whole taking is to the contrary. Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575 (ref. n. r. e.).

Appellant relies on the case of City of Dallas v. Priolo, Tex.Sup., 242 S.W.2d 176. We do not consider the holding in that case in point here. For one thing, it involved only a partial taking. The Supreme Court held that where the ownership of land, improvements, and business conducted thereon are in the same person, evidence of the resulting injury to the business is admissible, not as a separate item of damage, but as affecting the market value of the remaining land and improvements for the use to which they were adapted and being put.

In City of Dallas v. Priolo, supra, evidence as to gross sales and net operating profit had been put in evidence. The opinion does not state whether such evidence was admitted without objection. However, its admissibility was not the particular question the court was determining. The controversy arose over the admissibility of the proffered testimony of an expert witness who was propounded a hypothetical question including several factors involving *the market value of Priolo's grocery and liquor business, not the market value of his remaining land.* The Supreme Court held that such evidence was properly excluded because it was an attempt to establish a separate and independent item of recovery. That is an entirely different question than the one now before us.

Appellant also cites Milam County v. Akers, Tex.Civ.App., 181 S.W.2d 719 (writ ref.). We do not think it is in point either. It is another case of a partial taking. Also it involves agricultural land and the raising of livestock, as to which, as we have indicated, evidence of profits is allowed because of the intrinsic nature of the land. Further, though Milam County v. Akers holds that injury to a cattle business may be shown in determining the value of remaining land after a partial taking, it does not pass upon the admissibility of evidence such as that which was excluded in the case now before us.

Another case cited by appellant is Brazos River Conservation, etc. v. Costello, Tex. Civ.App., 169 S.W.2d 977 (ref. w. m.). But it, too, involves only a partial taking. Furthermore, it certainly relies on the rule as to profits derived from the intrinsic nature of the land, for it cites and quotes 65 A.L. R. 456, which is expressly limited, as stated in its Introductory, to a consideration of such cases.

We have considered all of appellant's points, but are of the opinion that no reversible error is shown. The judgment of the trial court is affirmed.