# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00738-CV

---

**Kimberley Ann Gunnarson, Individually and as Co-Trustee of the Trusts Created Pursuant to the Terms of the Last Will and Testament of Ivar Leonard Gunnarson, Deceased, and Gunnarson Outdoor Advertising, Inc., Appellants**

**v.**

**The State of Texas, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 15-0261-C, THE HONORABLE DAVID GLICKLER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from an award of compensation for real estate and fixtures the State condemned pursuant to Chapter 21 of the Texas Property Code, which requires a commission of laymen to determine the value of condemned property but allows an aggrieved party to seek judicial review of the resulting award. *See* Tex. Prop. Code §§ 21.001–.103 ("Eminent Doman"). Appellants Gunnarson Outdoor Advertising, Inc., and Kimberly Ann Gunnarson[1] contend the trial court misconstrued the holdings of *State v. Clear Channel Outdoor, Inc*., 463 S.W.3d 488 (Tex. 2015), and *State v. Central Expressway Sign Assocs*., 302 S.W.3d 866 (Tex. 2009), when it sustained the State's objections to certain evidence and then reduced the

---

[1] For clarity, we will refer to Kimberly Ann Gunnarson as Ms. Gunnarson, the corporation as Gunnarson Outdoor, and the two collectively as Gunnarson.

commission's award of compensation from $745,000 to $245,010. We will affirm in part and reverse and remand in part.

## BACKGROUND

As relevant to this appeal, Ms. Gunnarson owned a .413-acre tract of land along State Highway Loop 82 (also known as Aquarena Springs Drive) in San Marcos, Texas. This narrow tract of land—just 50 feet wide and 408 feet long and located between a railway and an access road—is situated near the football stadium at Texas State University, making the tract particularly desirable for outdoor advertising. For more than a decade, the tract had supported two double-sided billboards. Ms. Gunnarson would lease the improved tract to Gunnarson Outdoor, an advertising corporation she owns and operates.[2] Gunnarson Outdoor would then rent the four billboard faces to various advertising clients. On June 23, 2015, the State filed suit in a Hays County court at law, seeking to condemn the tract of land and remove the billboards to allow room to improve Loop 82.

## EMINENT DOMAIN

Our state constitution provides, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17. "If an entity with eminent domain authority wants to acquire real property for public use but is unable to agree with the owner of the property on the amount of damages, the entity may begin a condemnation proceeding by filing a petition in the proper court." *See* Tex. Prop. Code § 21.012. "The judge of a court in which a

---

[2] Ms. Gunnarson is the majority shareholder of the corporation. Family members apparently own a small percentage of shares but are not named as individual defendants.

condemnation petition is filed or to which an eminent domain case is assigned shall appoint three disinterested real property owners who reside in the county as special commissioners to assess the damages of the owner of the property being condemned." *See id.* § 21.014(a). Those commissioners must "swear to assess damages fairly, impartially, and according to the law." *Id*. § 21.014(b).

Compensation is constitutionally "adequate" if it reflects market value, defined as "the amount a willing buyer would pay a willing seller for the property." *See Central Expressway*, 302 S.W.3d at 871. "Texas recognizes three approaches to determining the market value of condemned property: the comparable sales method, the cost method, and the income method." *Id.* (citing *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001)). "The comparable sales method is the favored approach, but when comparable sales figures are not available, courts will accept testimony based on the other two methods." *Id*. (citing *Sharboneau*, 48 S.W.3d at 182–83). "The cost approach looks to the cost of replacing the condemned property minus depreciation." *Id*. (citing *Sharboneau*, 48 S.W.3d at 183, and *Religious of the Sacred Heart v. City of Houston*, 836 S.W.2d 606, 615–16 (Tex. 1992)). "The income approach is appropriate when the property would be priced according to the rental income it generates." *Id*. (citing *Sharboneau*, 48 S.W.3d at 183, and *Polk County v. Tenneco, Inc*., 554 S.W.2d 918, 921 (Tex. 1977)).

Where condemned property is subject to multiple interests—for example, those of an owner, a lessee, and a sublessee—the "undivided-fee rule" provides that "the property is valued for condemnation purposes as if it were owned by a single party." *See id.* at 873 (citing *State v. Ware*, 86 S.W.3d 817, 822 (Tex. App.—Austin 2002, no pet.), and *Aronoff v. City of Dallas*, 316 S.W.2d 302, 307–08 (Tex. App.—Texarkana 1958, writ ref'd n.r.e.)). "The purpose

3

of the rule is to award full compensation for the land itself, and not for the sum of the different parts." *Id*. (citing *Ware*, 86 S.W.3d at 824). "While each interest holder is entitled to a share of the compensation award, the award should be paid for the property itself, then apportioned between them." *Id*. (citing *Aronoff*, 316 S.W.2d at 307–08) (cleaned up). "When the property is subject to a lease, the fact-finder first determines the market value of the entire property as though it belonged to one person, then apportions that value between the lessee and the owner of the fee." *Id*. (citing *Urban Renewal Agency v. Trammel*, 407 S.W.2d 773, 774 (Tex. 1966), and *Aronoff*, 316 S.W.2d at 302)).

When a factfinder must determine the market value of commercial property, "Texas law allows income from a business operated on the property to be considered in . . . two situations: (1) when the taking, damaging, or destruction of property causes a material and substantial interference with access to one's property, and (2) when only a part of the land has been taken, so that lost profits may demonstrate the effect on the market value of the remaining land and improvements." *Id*. at 871 (citing *City of Austin v. The Avenue Corp.*, 704 S.W.2d 11, 13 (Tex. 1986), and *City of Dallas v. Priolo*, 242 S.W.2d 176, 179 (Tex. 1951)). "Absent one of these two situations, income from a business operated on the property is not recoverable and should not be included in a condemnation award." *Id*. Our state's highest court has applied this principle to outdoor advertising. *See Clear Channel*, 463 S.W.3d at 497 ("Valuing the billboards separately from the land cannot afford Clear Channel compensation for lost business income."); *Central Expressway*, 302 S.W.3d at 871 ("We are not inclined to create an exception for land on which a billboard is placed.").

4

## PROCEDURAL HISTORY

After the State filed its petition for condemnation and Gunnarson filed its response, the trial court appointed three special commissioners to determine the value of the condemned property and to calculate an award of damages. The commission held a hearing on June 30, 2015, and heard the following testimony:

- The State's appraiser, Lory Johnson, estimated the value of the land based on projected rental income and the value of the billboards using replacement cost less depreciation. She did not include Gunnarson Outdoor's advertising revenue. She recommended compensation of $125,000 for the tract and $120,010 for the two double-sided billboards.

- Gunnarson's appraiser, David Bolton, received instructions from Gunnarson's counsel to assume that the "gross advertising revenue from the signs is includable" when appraising the value of the billboards. Relying solely on the gross annual revenue Gunnarson Outdoor received from its advertisers, and after making certain adjustments not at issue here, he estimated the value of the condemned tract and its billboards as $1.28 million.

- Ms. Gunnarson testified as property owner and estimated a value of over $1.6 million for the tract and the two billboards. She based this figure on the net operating income Gunnarson Outdoor receives from its advertisers and what she referred to as a "multiplier of 18." It is unclear under what authority or theory she chose this multiplier.

All three witnesses testified that the best and highest use of the tract is for outdoor advertising. After reviewing the evidence, the special commissioners awarded Gunnarson $745,000 for the condemned tract of land and the two billboards.

Both sides objected to the $745,000 award and sought de novo review, *see* Tex. Prop. Code § 21.063, with each side characterizing the award as inconsistent with recent precedent. Shortly before the State condemned Ms. Gunnarson's property, the Supreme Court of Texas had addressed the calculation of damages resulting from the condemnation of real property containing outdoor advertising structures. *See generally Clear Channel*, 463 S.W.3d 488. The Court explained, "[A] billboard should be reflected in the valuation of the land at its highest and

5

best use," but that "the loss of the business is not compensable and cannot be used to determine the value of the billboard structure." *Id.* at 490. The Court then held, "'[E]vidence of valuation based on advertising income' is inadmissible, while '[g]eneral estimates of what the property would sell for considering its possible use as a billboard site are acceptable.'" *Id.* at 497 (quoting *Central Expressway*, 302 S.W.3d at 874).

While preparing for trial to the bench, the State obtained another expert—Matthew Whitney—to estimate the value of the condemned tract and its billboards. To estimate the value of the tract of land, he relied on the gross rental income received by other owners of land leased to billboard operators and calculated an appraised value of $114,314. He appraised the value of the billboards using replacement cost less depreciation, resulting in an estimated value of $76,500 and a total recommended compensation of $190,814.

The parties raised cross-objections to the evidence regarding market value, with Gunnarson arguing that Whitney had improperly excluded the "income evidence" deemed admissible and relevant by the Supreme Court of Texas in *Clear Channel*, 463 S.W.3d at 497–98. The State, meanwhile, argued that Gunnarson's expert witness had improperly relied upon the "business income generated by the billboards" that the *Clear Channel* Court expressly held inadmissible as evidence of property value, *see id.*, and maintained that Ms. Gunnarson herself could not satisfy the standard governing reliability of an owner's testimony on property value, *see generally Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150 (Tex. 2012). The parties also filed cross-motions for summary judgment on the ultimate issue before the court: the calculation of just compensation for the condemned property.

After a hearing on the cross-objections to the witnesses and the cross-motions for summary judgment, the trial court sustained the State's objections to Bolton's appearance as

6

witness and to his appraisal, which the court described as "prohibited by the Texas Supreme Court in Clear Channel." The trial court, in its own words, "further ruled that the defendant, Ms. Gunnarson, would not be allowed to testify as to her expert opinion on the issue of valuation, due to her failing to be able [sic] to meet the standard required by *Justiss*." The court then overruled Gunnarson's objections to Whitney's methodology.[3]

Following these rulings from the bench, Gunnarson did not produce alternate evidence of market value. Instead, Gunnarson successfully sought a continuance of the hearing to seek mandamus review of the exclusion of Bolton's appraisal, Bolton's testimony, and Ms. Gunnarson's testimony on market value. This Court and the Supreme Court of Texas denied mandamus relief. *See In re Gunnarson*, No. 03-17-00045-CV, 2017 WL 474086, at *1 (Tex. App.—Austin Feb. 3, 2017, orig. proceeding [mand. denied]).

With this Court and the Supreme Court of Texas having denied Gunnarson's petitions for mandamus relief, the trial court issued its order on summary judgment, explaining in pertinent part:

> This Court finds that the only credible evidence of valuation before this Court is the State's evidence, and the State's only credible evidence indicates two valuations, one for $190,814.00 and $245,010.00. Though there are two different valuations provided by the State's witnesses, one in a certified appraisal by an expert witness, and one by an appraiser provided under oath in a contested hearing, the Court finds . . . there are no material facts in dispute under the state of this record in this matter, based on this Court's prior rulings, and that Summary Judgment for the State is proper, and grants the State's motion for Summary Judgment.

---

[3] Specifically, the county court at law denied Gunnarson's motion to exclude Whitney's testimony, sustained the State's motion to exclude Bolton's testimony and its motion to exclude Gunnarson's testimony on valuation, and denied Gunnarson's motion for summary judgment. Other rulings from this hearing are not at issue on appeal.

The trial court then awarded compensation of $245,010.00 based on the State's highest appraised value of the condemned property and ordered the return of approximately $500,000.00 of the monies the State had deposited in the court registry following the hearing before the special commissioners. The trial court subsequently amended its order granting the State's cross-motion for summary judgment to render take-nothing final judgment against Gunnarson. Gunnarson timely perfected this appeal.

## DISCUSSION

Gunnarson raises what it describes as eight points of error. To facilitate this discussion, we will consolidate and summarize these arguments into three broad issues on appeal. *See Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.*, 997 S.W.2d 298, 304 n.9 (Tex. App.—Austin 1999, pet. denied) (consolidating points of error for discussion); *Niess v. State*, No. 03-11-00213-CR, 2012 WL 2383300, at *1 (Tex. App.—Austin June 21, 2012, no pet.) ("Though Niess raises these arguments in thirteen separate points of error, for convenience we have grouped the points of error into four legal issues on appeal."). First, Gunnarson alleges the trial court abused its discretion by sustaining the State's evidentiary objections and overruling Gunnarson's objections to the State's witnesses. Second, Gunnarson argues the court erred in its disposition of the cross-motions for summary judgment. And third, Gunnarson contends that Chapter 21 of the Property Code and other statutes violate the United States and Texas constitutions.

**Evidentiary Objections**

In its challenges to the trial court's evidentiary rulings, Gunnarson complains that the court erroneously: 1) sustained the State's objections to Gunnarson's appraisal expert

8

without allowing Gunnarson to submit a formal bill of exception on the excluded testimony; 2) sustained the State's objections to Gunnarson's testimony as the property owner; and 3) overruled Gunnarson's objections to the State's appraisal experts. "The qualification of a witness to testify as to value [of condemned property] is one for a trial court to determine, and will not be disturbed on appeal unless there is an abuse of discretion." *Huckabee v. State*, 431 S.W.2d 927, 932 (Tex. App.—Beaumont 1968, writ ref'd n.r.e.); *see also Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001). "'The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles.'" *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996) (quoting *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995)). "Moreover, we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (citing Tex. R. App. P. 44.1; *Gee v. Liberty Mut. Fire Ins.*, 765 S.W.2d 394, 396 (Tex. 1989)).

*Exclusion of Bolton's Testimony*

Gunnarson complains the trial court abused its discretion by misconstruing relevant precedent as requiring the exclusion of Bolton's valuation testimony on Gunnarson Outdoor's advertising revenue. It further insists that the trial court compounded that abuse by denying its request to file a bill of exception. The State disagrees, maintaining that the trial court correctly interpreted *Clear Channel*'s distinction between the rental income attributable to the land itself, which a factfinder may consider as evidence of fair market value, versus the

"business income generated by the billboards," which he may not. *See Clear Channel*, 463 S.W.3d at 498. We agree with the State.

The admissibility of expert testimony is governed by Rule 702 of the Texas Rules of Evidence. Rule 702 requires that a witness be qualified to testify on the subject matter and "also requires the proponent to show that the expert's testimony is relevant to the issues in the case and is based on a reliable foundation." *See Robinson*, 923 S.W.2d at 556 (citing Tex. R. Evid. 702). In both *Central Expressway* and *Clear Channel*, the Supreme Court of Texas unequivocally held that revenue from outdoor advertising is not a reliable foundation upon which an expert may base his estimated value of condemned real estate or fixtures.

*Central Expressway* was a dispute over the market value of a tract of land encumbered by three property interests: the fee simple, whose holder had already settled with the State; an easement owned by Central Expressway; and a leasehold owned by Viacom, which operated billboards it had erected in the easement pursuant to the terms of the lease. *See* 302 S.W.3d at 869. After the owner of the fee simple settled with the State and Viacom relocated its billboards, the remaining parties disagreed how to appraise the value of the easement. *See id.* Central Expressway and Viacom successfully urged the court to admit evidence of Viacom's advertising revenue and to exclude testimony from the State's expert, who did not incorporate that revenue into his valuation of the easement. *See id*. at 869–70. The court of appeals affirmed the resulting award, *see id.* at 870, but the Supreme Court deemed the exclusion of the State's expert witness an abuse of discretion, *see id*. The *Central Expressway* court reversed the award and remanded the case, clarifying: "On remand, the trial court should not allow evidence of valuation based on advertising income." *See id*.

10

Six years later, *Clear Channel* reaffirmed *Central Expressway*'s evidentiary holding. The case involved a dispute over the compensation due to Clear Channel as lessee of the condemned tract and owner of two billboards on that tract. *See* 463 S.W.3d at 490. Whereas in *Central Expressway* the owner of the billboard had relocated its advertising fixtures, *see* 302 S.W.3d at 869, Clear Channel did not move its billboards prior to condemnation, *see* 463 S.W.3d at 490. After the landowner and Clear Channel accepted a settlement offer of compensation for the fee simple and the leasehold, Clear Channel insisted on additional compensation for the two billboard structures destroyed in the condemnation. *See id.* at 491. The trial court agreed and allowed Clear Channel to produce its advertising revenue from the two billboards as evidence of market value, and the court of appeals affirmed the resulting award of damages. *See id.* On petition for review, the high court agreed with the lower courts that the State must compensate Clear Channel for the loss of its fixtures. *See id.* at 493–96. The Court cautioned, however, that "valuing the billboards separately from the land cannot afford Clear Channel compensation for lost business income that could not be recovered in [*Central Expressway*]," and emphasizing that "the property its expert valued—the billboard advertising operations—was not the property taken." *See id.* at 497. It then reversed the judgment and remanded for a new trial.

Gunnarson contends the trial court misconstrued this precedent when it sustained the State's objection to Belton's planned testimony. But *Central Expressway* and *Clear Channel*, taken together, preclude property valuation based on advertising revenue unless an exception applies.[4] Equally clear is the high court's position that a factfinder must calculate a

---

[4] The factfinder may, however, consider business revenue as some evidence of the best and highest use of the property. *See State v. Clear Channel Outdoor, Inc.*, 463 S.W.3d 488, 498

11

single value for the condemned property, irrespective of how many competing interests encumber that property. In urging an alternate construction of this precedent, Gunnarson observes, "This site was income producing property—nothing more," and then posits the rhetorical question, "[W]hy is the valuation process for this site different from any other income producing site?" Yet the import of these two cases is that outdoor advertising *is* evaluated like any other income-producing endeavor. *See id.* at 873 (rejecting business owner's argument that billboards are "unique" as location-based income-producing structures). Thus, the trial court correctly deemed Belton's planned testimony inadmissible due to his improper reliance on gross advertising income as evidence of the value of the condemned tract and the fixtures upon it.

Gunnarson characterizes *Clear Channel* and *Central Expressway* as distinguishable from the present case due to the close relationship between Ms. Gunnarson as the landowner and Gunnarson Outdoor as the leaseholder. Gunnarson contends, "In this case, the ownership of the land, the billboards, and the grandfathered permits are integrated so that the income stream is directly and verifiably tied to the land" and complains that "[t]he State had no evidence of condemnations of billboard properties with an integrated owner." It is unclear where Gunnarson derived its "integrated owner" theory of property valuation, as it offers no supporting authority from Texas or any other jurisdiction. But regardless of whether Gunnarson considers this land encumbered by the separate property interests of Ms. Gunnarson and Gunnarson Outdoor or the single property interest of an "integrated owner," total compensation for the property is unchanged: it must reflect "the market value of the entire property as though it

---

(Tex. 2015) ("The business income may be some indication of the rental value of the land for use as a billboard site, though other market factors are likely to be equally important, such as the availability of similar sites.").

belonged to one person." *Central Expressway*, 463 S.W.3d at 497 (citing *Urban Renewal Agency*, 407 S.W.2d at 774, and *Aronoff*, 316 S.W.2d at 302)).

Gunnarson's other contentions regarding the lower court's interpretation of precedent center on the alleged unfairness of excluding evidence of business income given the disparity between Bolton's appraised value of $1.28 million and the State's appraisals of between $190,814 and $245,010. In its briefing here and below, Gunnarson cites various trade publications that describe unique aspects of outdoor advertising that render evidence of business income critical to estimating the fair market value of billboards. But this State's highest court has identified only two exceptions to the general rule excluding business income as evidence of property value, and that court has rejected arguments nearly identical to those Gunnarson raises here. *See In re Farmers Ins. Exch.*, 143 S.W.3d 354 (Tex. App.—Austin 2004, mand. denied) ("Absent further guidance from the Texas Supreme Court, we decline Relators' invitation to extend *CSR, Ltd. v. Link*, 925 S.W.2d 591, 596–97 (Tex. 1996), and *National Industrial Sand Ass'n v. Gibson*, 897 S.W.2d 769, 771 (Tex. 1995) . . . .")); *Loe v. Murphy*, 611 S.W.2d 449, 452 (Tex. App.—Dallas 1980, writ ref'd n.r.e.) ("Defendant is essentially asking us to either extend one of the exceptions discussed above, or to create a new exception. We decline to do either."). Thus, because no exception applies, the trial court acted within its discretion by excluding Bolton's testimony based on advertising revenue.

*Exclusion of Gunnarson's Testimony*

Gunnarson also complains of the trial court's ruling sustaining the State's objection to Ms. Gunnarson's planned testimony on market value. Although the court allowed Ms. Gunnarson to testify on other subjects, it concluded she could not satisfy the governing

13

standard for offering lay testimony on property value. In some contexts, "[a] property owner may testify to the value of his property." *Justiss*, 397 S.W.3d at 155. However, "a property owner's testimony must be based on market, rather than intrinsic or some other speculative value of the property." *See id.* (quoting *Porras v. Craig*, 675 S.W.2d 503, 505 (Tex. 1984)). Here, Ms. Gunnarson based her planned testimony on the market value of her company's "face rents" and net advertising income. As already explained, the Supreme Court of Texas has repeatedly characterized evidence of business income as too "speculative" to reflect market value. *See, e.g.*, *Clear Channel*, 463 S.W.3d at 496; *Central Expressway*, 302 S.W.3d at 871 (citing *Herndon v. Housing Auth.*, 261 S.W.2d 221, 223 (Tex. App.—Dallas 1953, writ ref'd)). Thus, because Gunnarson's planned testimony was based on speculation rather than market value of the property, the trial court did not abuse its discretion in sustaining the State's objection and limiting Gunnarson's testimony to other subjects.

### *Exclusion of Stokes's Letter*

Gunnarson complains that "the trial court erred in striking the Chris Stokes' [sic] letter," which included an advertising executive's opinion of the approximate value of the tract. Gunnarson asked Stokes to write the letter and had planned to have Bolton and Ms. Gunnarson incorporate his estimate into their own valuation testimony. Gunnarson contends that Bolton could properly have offered testimony regarding the letter because "[a]n expert may base an opinion on facts or data that the expert has been made aware of, reviewed, or personally observed." *See* Tex. R. Evid. 703. But even assuming the letter constitutes "facts or data" that Bolton had "been made aware of, reviewed, or personally observed," expert testimony still must rest on a reliable foundation, *see id.* R. 702, and Bolton's appraisal methodology did not provide

14

one. Nor could the Stokes letter provide such a foundation, as no one was able to identify the basis for Stokes's valuation of the property. For example, during deposition, counsel asked Ms. Gunnarson, "Do you know the basis by which [Stokes] came up with the value?" She responded in the negative. When Bolton was asked if he knew of "any of the analysis that went on behind the letter" and its estimate, he also answered in the negative. The Stokes letter thus could not have provided a reliable foundation for Bolton's testimony.

With respect to Ms. Gunnarson's anticipated reliance on the Stokes letter, the district court properly excluded the letter and its estimate. Ms. Gunnarson intended to rely on the letter as evidence of the property value stated therein, thus rendering the letter hearsay. *See id.* R. 801 (defining hearsay as declarant's statement not made during testimony at current proceeding but offered to prove truth of matter asserted). Gunnarson has not identified an exception such that the letter and its valuation might be admissible. *See id.* R. 802 (prohibiting admission of hearsay unless statute or rule provides exception). The district court therefore did not abuse its discretion in excluding the Stokes letter and its estimate of the condemned property's value.

### *Bill of Exception*

We find unpersuasive Gunnarson's contention that the trial court abused its discretion in declining to allow a bill of exception or offer of proof on the excluded testimony and evidence. Gunnarson had presented both Ms. Gunnarson's testimony and Belton's appraisal to the special commissioners, and a record of their respective opinions—including the improper reliance on advertising revenue—was already before the trial court. The record also includes extensive deposition testimony regarding the Stokes letter, thereby rendering a bill of exception

15

unnecessary.  *See* Tex. R. App. P. 33.2 (requiring bill of exception to preserve issues that "would not otherwise appear in the record").

### *Admission of State's Evidence*

Gunnarson's challenge to the testimony of the State's expert is similarly unavailing.  Gunnarson argues that "the Property was uniquely desirable for its highest and best use, and there was no evidence of a truly comparable property."  Among the apparently desirable qualities of this tract were its location near the junction of Loop 82 and Interstate 35, its proximity to the football stadium, and the unusually low vacancy on the four faces of the billboards.  As the trial court described it, "The [condemned property] was unique because:  (i) it was located at a busy intersection, (ii) the billboards were visible from five separate roads, the Texas State University Bobcat Stadium along with associated parking areas, a baseball field and a golf course, and (iii) it was near a railroad crossing."  In preparing his appraisal, Whitney evaluated tracts used for outdoor advertising along I-35 and other heavily traveled corridors in Hays County.  He used those ground leases and the acreage of the condemned tract to estimate the market value of Ms. Gunnarson's land.  Gunnarson contends Whitney's appraisal "should have taken into account the facts that the necessary permits were in place and that the site was especially suited to that use."  But Whitney used tracts with similar operating permits to appraise the value of the condemned property, and Gunnarson has not identified any lack of reliability in Whitney's methodology.  Thus, the trial court did not abuse its discretion in admitting Whitney's testimony.

16

Having rejected each of Gunnarson's evidentiary challenges, we hold that the trial court acted within its discretion in overruling Gunnarson's objections to Whitney's testimony and in sustaining the State's objections to the testimony of Bolton and Ms. Gunnarson.

**Summary Judgment**

In its next issue, Gunnarson contends the trial court erred by granting the State's motion for summary judgment and denying Gunnarson's cross-motion for summary judgment. Both motions sought summary judgment on the market value of the condemned tract and billboards. Summary judgment is proper when the evidence before the trial court shows there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c). When multiple parties move for summary judgment on overlapping issues, we undertake de novo review of all evidence and issues presented, and, if the trial court erred, render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *see also* Tex. R. App. P. 43.2(c).

Gunnarson argues:

> In this case the trial court erred because the State's own evidence (as well as [Gunnarson's]) created a fact issue as to the fair market value of the Property. [Ms.] Gunnarson established through her testimony as the property owner a value of $1,600,000.00 because of its highly desirable location for a billboard. The State also introduced into evidence Lory Johnson's report and testimony. . . . With three valuations, Johnson's testimony creates a material fact question even before the trial court considered Whitney or Appellants' experts.

We agree. Even after the exclusion of Gunnarson's evidence of market value, the State's evidence alone created a genuine question of fact on the issue. It offered into evidence two appraisals of the real estate and fixtures: one of approximately $245,000 and one of approximately $190,000. These competing appraisals create a material question of fact

regarding the fair market value of the condemned property. *See Read Rd. Mun. Util. Dist. v. Speed Shop Food Stores, Ltd*, 337 S.W.3d 846, 855–56 (Tex. 2011) (holding that appraisal originally offered at hearing before special commissioners remained relevant evidence of value of condemned property). And although the trial court resolved this dispute in Gunnarson's favor by awarding the higher of the appraised values, the two valuations together create a fact issue that precludes summary judgment. Thus, because the State did not meet its burden to establish fair market value as a matter of law, the trial court erred by granting its motion for summary judgment. We therefore sustain Gunnarson's point of error and reverse the entry of summary judgment and the award of damages.

**Constitutional Challenges**

In its final issue on appeal, Gunnarson challenges the constitutionality of Chapter 21 of the Property Code, Section 402.31 of the Government Code, and various related rules and regulations. Gunnarson argues:

> A review of the Texas Property Code reveals that the Texas statute only requires the State to make a bona fide offer to the property owner. There is no obligation to pay the property owner fair market value or just compensation. . . . This deficiency is further compounded in Texas Property Code Section 21.042(b), which directs special commissioners to calculate the property owner's damages as "local market value." There is no definition of local market value and nowhere does the legislature indicate that the damages of the condemnee must be "just compensation" or "fair market value" as that term [sic] is understood.

Gunnarson further complains that "[i]n this case, the State engaged in the most serious form of invasion of [Gunnarson's] rights and refused to justly compensate them" before alleging that "the statutes upon which the State relies to justify its actions are unconstitutional." Yet while Gunnarson argued below that the State's proposed compensation and the compensation awarded

18

by the special commission are constitutionally inadequate, Gunnarson never pleaded or argued a constitutional challenge to the statutes or regulations themselves. "A constitutional challenge not raised properly in the trial court is waived on appeal." *Johnson v. Lynaugh*, 800 S.W.2d 936, 939 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (citing *Walker v. Employees Retirement Sys.*, 753 S.W.2d 796, 798 (Tex. App.—Austin 1988, writ denied)); *see also Mercer v. Phillips Nat. Gas Co.*, 746 S.W.2d 933, 936 (Tex. App.—Austin 1988, writ denied) ("Taking part in a proceeding which fixes liability without challenging the constitutionality of the law which gives rise to the cause of action may constitute a waiver of the right to question that law subsequently." (citing *Humbird v. Avery*, 195 U.S. 480, 502–03 (1904), and 16 *C.J.S. Constitutional Law* §§ 78–84 (1984))). We therefore do not address Gunnarson's argument.

## CONCLUSION

Because the county court at law erred by granting the State's cross-motion for summary judgment, we reverse its Modified Order disposing of that motion to the extent it awarded Gunnarson $245,010 in compensation for the condemned real estate and fixtures. We affirm the order in all other respects and remand for further proceedings consistent with this opinion.

_____
Edward Smith, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed in Part; Reversed and Remanded in Part

Filed: February 26, 2020